PEOPLE'S NAT. BANK OF LYNCHBURG v. MARYE, Auditor of Public Accounts. FIRST NAT. BANK OF LYNCHBURG v. SAME. LYNCHBURG NAT. BANK v. SAME. NATIONAL EXCH. BANK OF LYNCHBURG v. SAME.

(Circuit Court, E. D. Virginia. February 5, 1901.)

1. TAXATION—FEDERAL COURTS—ENJOINING COLLECTION OF STATE TAXES.

A federal court will not enjoin the collection of taxes levied under the authority of a state upon the shares of a national bank, unless it clearly appears not only that the tax is illegal, but also that there are special circumstances which bring the case within some recognized ground of equity jurisdiction, and render such relief necessary to the adequate protection of the complainant's rights.

2. SAME—BANK SHARES—SUIT BY BANK FOR INJUNCTION.

A bank cannot maintain a suit in equity on behalf of its shareholders to enjoin the collection of taxes levied on their shares, where the shareholders themselves could not maintain such suit, and where the statute under which the taxes are levied imposes no duty or liability on the bank in respect to the same.

3. SAME—VIRGINIA STATUTE.

Act Va. March 6, 1890, providing for the taxation of bank shares, required the banks to pay the taxes levied thereunder against their stockholders, and provided that, in case a bank failed to make such payment within a certain time, the cashier and his sureties should be liable therefor, with an added penalty, to be recovered at suit of the state. Act March 3, 1896, providing for the collection of delinquent taxes on bank shares, left it optional with a bank to pay such taxes levied against its stockholders, and provided that, in case it did not elect to make such payment after notice, suits should be instituted for the collection of the same from the stockholders individually. *Held*, that whether the later act be regarded as repealing the provision of the one under which the taxes were levied, authorizing suit against the cashier, or as merely providing a cumulative remedy, a national bank could not maintain a suit to enjoin the officers of the state from proceeding to collect such taxes, upon an allegation that the statute imposing the same was discriminative and invalid, under the laws of the United States, as applied to national bank shares, where it was not alleged that any action was threatened or contemplated against the bank itself, since, in suits against the stockholders under the later act, they had full opportunity to make any defense, and neither they, nor the bank in their behalf, had any ground for injunction.

4. EQUITY JURISDICTION—PREVENTING MULTIPLICITY OF SUITS.

The jurisdiction of equity on the ground of preventing a multiplicity of suits can be invoked only where such suits will be against the same person, and a bank cannot maintain a suit on that ground to enjoin separate suits against its stockholders for the collection of taxes levied upon their shares.

5. TAXATION—BANK SHARES—SUIT BY BANK FOR INJUNCTION.

Where a statute providing for the taxation of bank shares imposes duties and liabilities on the bank, as by requiring it to withhold dividends from its stockholders and apply the same to the payment of the taxes on their stock, and subjecting it to heavy penalties for a failure to comply with such requirements, it may maintain a suit in equity on behalf of its stockholders to test the validity of such statute, and to enjoin its enforcement if found invalid.

6. SAME—MODE OF ASSESSMENT—DISCRIMINATION AGAINST NATIONAL BANK SHARES.

A statute imposing taxes upon bank shares is not invalid because it requires the assessment of such shares at their market value, without making any deduction on account of the real estate owned by the bank, which is separately taxable,—the shares being the property of the stock-

holder, while the real estate is the property of the corporation; nor can such statute be held discriminative and invalid under Rev. St. § 5219, as to national bank shares, where it applies to all banks.

**7. SAME.**

That the statutes of a state permit a taxpayer to deduct the amount of his indebtedness from the amount of all bonds, notes, and other evidences of debts which he is required to return for taxation does not render the assessment of national bank shares at their market value, without allowing the holder to deduct his indebtedness, an unlawful discrimination against such shares, and in favor of other moneyed capital, under Rev. St. § 5219, where the same rule of assessment applies to all bank shares.

**8. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—TAXATION PROCEEDINGS.**

A statute providing for the taxation of bank shares which requires the banks themselves to make returns showing the market value of their shares, and itself fixes the rate of tax which shall be levied on such valuation, is not unconstitutional, as depriving the shareholders of their property without due process of law, although it provides for no notice to them of the assessment, or opportunity to be heard thereon, and makes the tax bills self-executing, and enforceable by levy without suit, since no judicial act is done by any officer in relation to such assessment, and no action is taken after the return is made by the bank which could in any way be affected by a notice or hearing.

**9. FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF STATE STATUTE.**

Where the validity of a statute under a state constitution has been determined by the highest court of the state, its decision will be followed by the federal courts.

In Equity. Suits by the People's National Bank of Lynchburg, the First National Bank of Lynchburg, the Lynchburg National Bank, and the National Exchange Bank of Lynchburg in behalf of their shareholders, against Merton Marye, as auditor of public accounts of the state of Virginia, to enjoin the collection of taxes levied on their shares of stock. On demurrer to bills.

The four national banks above named (the first being a test case) are resisting the payment of certain taxes claimed by the state of Virginia to be due by their stockholders under three acts of assembly of the state of Virginia, —the first passed on the 6th of March, 1890, and the other two on the 3d day of March, 1896. These acts are herein set forth in full, so far as they are necessary to an intelligent understanding of the questions presented for determination in these causes.

"Chap. 244. An act to provide for the assessment of taxes on persons, property and incomes, and on licenses to transact business and imposing taxes thereon for the support of the government and public free schools, and to pay the interest on the public debt, and prescribing the mode of obtaining licenses to sell wine, ardent spirits. malt liquors, or any mixture thereof, in cases where a court certificate is required. Approved March 6, 1890.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Sec. 17. No tax shall be assessed upon the capital of any bank or banking association organized under the authority of this state or of the United States; but the stockholders in such banks or banking associations shall be assessed and taxed on the market value of their shares of stock therein at the same rate as is assessed upon other moneyed capital in the hands of individuals residing in this state. It shall be the duty of each commissioner of the revenue annually, during the month of May, to report to the auditor of public accounts the name of each bank or banking association doing business in his district, and the names of the officers thereof, and to assess the share or shares of each stockholder in the banks or banking associations aforesaid at the market value thereof as of the first day in February in each year, and it shall be the duty of each of such banks or banking associations forth-

with to pay into the treasury of the state the tax imposed by law upon such assessments of the shares aforesaid on or before the first day of June. If such tax be not paid within thirty days after the assessment of said shares, the cashier of the bank or banking association failing to make payment, and his sureties, shall be liable for the same, and twenty per centum upon the amount to be recovered, on motion of the auditor of public accounts, in the circuit court of the city of Richmond, upon fifteen days' notice, according to the provisions of the section seven hundred and thirteen of the Code of Virginia. The real estate of all banks and banking associations shall be assessed upon the land books of the commissioners of the revenue with the same taxes with which other real estate is assessed."

"Chap. 642. An act to authorize and empower the auditor of public accounts to collect taxes heretofore assessed upon bank stock held by resident and nonresident stockholders. Approved March 3, 1896.

"Section 1. Be it enacted by the general assembly of Virginia, that the holders of bank stock or the stock of any banking association doing business in this state, resident and nonresident, shall be assessed with the tax imposed thereon by law in the city, town or district wherein the bank or banking association is located, and said tax shall be the first lien upon said stock, no matter in whose hands found, and have priority over any and all liens by deed of trust, mortgage, bill of sale, or other assignment made by the owner, and take priority over all liens by execution, garnishment, or attachment process.

"Sec. 2. It shall be the duty of the auditor of public accounts, as soon as practicable after the passage of this act, to furnish the cashier of the banks or banking associations doing business in this state with a list of its stockholders heretofore assessed with taxes upon their bank stock who have not paid said tax, which list shall give the name of the stockholder, amount of tax, when assessed, and the sum total due to the commonwealth by each stockholder. The bank or banking association, should it so desire and elect, may pay to the auditor: provided payment shall be made on or before the first day of July, eighteen hundred and ninety six.

"Sec. 3. But should the privilege conferred by the preceding section be declined or not availed of by the bank or banking association aforesaid, then it shall be the duty of the auditor without delay to notify the attorney general and give him a copy of the lists furnished the cashier of the bank or banking association aforesaid, and the attorney general, by motion, shall proceed to collect said taxes from the individual stockholder. This motion shall be cognizable by and made in the circuit court of Richmond city after ten days' notice to the stockholder, and may be served upon nonresident defendants in the mode provided by section thirty two hundred and eight of the Code of Virginia.

"Sec. 4. This act shall be enforced from its passage.

\* \* \* \* \* \* \* \* \* \*

"Sec. 17. Taxes on banks. No tax shall be assessed upon the capital of any bank or banking association organized under the authority of this state or of the United States, but the stockholders in such banks or banking associations shall be assessed and taxed on the market value of their shares of stock therein at the same rate that is assessed upon other moneyed capital in the hands of individuals residing in this state. Each bank or banking association aforesaid, on the first day of February in each year, shall make up and return to the commissioner of the revenue of the county, city, town or district in which said bank or banking association is located a report, in which shall be given the names of the stockholders, the number of shares owned or held or controlled by each, the market value of said stock, and the stockholders' residence. It shall be the duty of said commissioner of the revenue, on or after the first day of February, in each year, to assess each stockholder upon the shares of stock estimated at the market value on said first day of February in each year a tax of thirty cents on each hundred dollars' value thereof; the proceeds of which shall be applied to the support of the government, and a further tax of ten cents on every hundred dollars' value thereof, which shall be applied to the support of the public free schools of the state, and make out three assessment lists, give one to the bank or banking association aforesaid,

located in his city, county, town or district, and one to the auditor of public accounts, and retain one. The assessment list delivered to said bank or banking association shall be notice to the bank or banking association of the tax assessed against its stockholders and each of them, and have the legal effect and force of a summons upon suggestions formally issued and regularly served. The tax assessed upon each stockholder in said bank or banking association shall be the first lien upon the stock standing in his name and upon the dividends due and to become due thereon, no matter in whose possession found, and have priority over any and all liens by deed of trust, mortgage, bill of sale or other assignment made by the owner or holder, and take priority over all liens by execution, garnishment or attachment process sued out by creditors of the stockholder. The bank or banking association shall hold the dividend or other fund which belongs to the stockholder and in its custody at the time the assessment list is received, and that thereafter shall come under its control, for the use of the commonwealth, and apply the same to the payment of the tax assessed, and when thus applied shall be acquitted and discharged from all liability to the stockholder for the money thus disbursed: provided, that after making report to the commissioner of the revenue any bank or banking institution, on or before the first day of June in each year, which shall so elect, may pay the taxes assessed against the stockholders directly to the auditor of public accounts. But should said bank or banking association fail to elect and pay into the treasury the tax assessed against its stockholders on or before the first day of June in each year, then as soon thereafter as practicable the auditor of public accounts shall transmit to the treasurer of the county or city in which said bank or banking association is located a copy of the assessment list furnished him by the commissioner of the revenue, and it shall be said treasurer's duty to collect the taxes therein assessed, and to this end levy upon the stock of the taxpayer or so much thereof as is necessary to pay said tax, and sell the same at public auction for cash, as other chattels and personal property are sold under execution. He shall give to the purchaser a bill of sale made under his hand and seal. The bank or banking association in which such bank stock stands on presentation by a purchaser of his bill of sale shall cause the stock therein described to be transferred to said purchaser, and he shall take a clear and unencumbered title to the stock purchased. Should the taxes assessed against bank stockholders evidenced by the bids aforesaid be not paid or collected as hereinbefore provided, the lists aforesaid shall stand and be treated and have the legal effect of tax-tickets regularly made out against each of said stockholders named in said lists as to which tax the right of levy and distress had accrued to the commonwealth, and the treasurer shall proceed to collect the same by levy or distress, and possess all and singular the authority and power conferred upon him by law to collect other state taxes, and be governed by sections six hundred and twenty-two and six hundred and twenty-three of the Code of Virginia. The bank or banking association which shall fail or neglect to comply with each and every provision of this act for each separate offence shall be fined not less than one hundred nor more than five hundred dollars, which fine shall be recovered upon motion, after five days' notice in the county, circuit, corporation or hustings court of the county, city or district in which the said bank or banking association is located. Said motion shall be in the name of the commonwealth and presented by the attorney for the commonwealth of the court in which the motion is brought or made. The real estate of all banks and banking associations shall be assessed on the land books of the commissioners of the revenue with the same taxes with which other real estate is assessed.

"(2) This act shall be in force from its passage." Acts 1895–96, c. 669.

The complainants filed their original bills assailing the validity of the tax for the years 1891, 1892, 1893, 1894, and 1895, assessed under the first-named act, and made collectible under the second act of the 3d of March, 1896, providing for the collection of delinquent taxes, and insisted that said acts were unconstitutional, because (1) under the first act no legal and proper assessments were provided for or ever made against the stockholders of the said several banks; (2) because under said act the assessments were made without permitting any deduction from the market value of such stock on account of the

existing indebtedness of the bank's shareholder, as allowed in assessing the value of bonds, notes, and other evidences of debts, including bonds due from railroads, canal companies, bonds of towns, cities, and counties, bonds of other states and corporations, demands and claims, however evidenced, owing to or coming to the persons under the laws of the commonwealth, which was averred to be a discrimination against the holders of shares of national bank stocks, in violation of the provisions of section 5219 of the United States Revised Statutes; (3) because under the said act of the 3d of March, 1896, the shares of stockholders in national banks were assessed at their market value, without deducting the real estate held by the said bank. And by amended and supplemental bills, subsequently filed, the complainants respectively attacked the validity of the said act of the 6th of March, 1890, because the same was claimed to be in contravention of article 10, § 16, of the constitution of the state of Virginia, in that it did not sufficiently set forth the tax and the object to which it was to be applied, and further assailed the second act of the 3d of March, 1896, and alleged that the taxes assessed thereunder for the years 1896 and 1897 were not due, and that the said act, for the reason above named, was also unconstitutional. To these several bills the auditor of public accounts, through the attorney general of Virginia, appeared and filed a general demurrer, in which complainants joined, and claimed that the several acts were constitutional, denied the right of the banks to maintain these suits in behalf of their stockholders, and insisted that the court was without jurisdiction to interpose in behalf of the banks, and that no case was made for the interposition of a court of equity.

Blackford, Horsley & Blackford, and John L. Lewis, for complainant banks.

Andrew J. Montague, Atty. Gen., for defendant.

WADDILL, District Judge (after stating the facts). In the determination of the matters presented for the consideration of the court, two preliminary questions arise: First, as to whether the banks, under the said statutes, have a right to maintain these suits in behalf of their stockholders; and, second, whether a case has been made for the interposition of a court of equity to restrain the state in the collection of its revenues. In the consideration of these questions, in the view taken by the court, the original and supplemental bills should, for a moment, be considered separately, as the original bill only assails the act of March 6, 1890, and the act of the 3d of March, 1896, providing for the collection of delinquent taxes due by the stockholders of the banks.

Although it is alleged that the taxes under the act of the 6th of March, 1890, were regularly from year to year assessed and demanded of the banks, it is admitted that no steps were taken or threatened, looking to the collection of the same, until after passage of the act of March 3, 1896, providing for the collection of delinquent taxes, and to that the averment is:

"Your complainant is now informed, believes, and charges that the auditor of public accounts of Virginia is now demanding of your complainant the said several sums taxed against the stock upon the assessments aforesaid, and is proceeding to take such steps as are necessary for the purpose of collecting the same under the powers vested in him under said acts," and "that the action on the part of the auditor in demanding said payments from your complainant and from its several stockholders is illegal and void."

And in reference to the remedy by proceeding under the act of March 6, 1900, against the bank's cashier and his sureties, the allegation is:

"Whether it is proposed to resort to this remedy or not, for the purpose of enforcing such payment from your complainant, it is not advised. The law undertakes to give the power, and the bank and its cashier are subject to the dangers of its operation."

It is quite apparent that the object of the act of the 3d of March, 1896, was to authorize the collection of delinquent taxes assessed upon bank's stockholders under the act of March 6, 1890, and that until said act was passed no real effort was made to collect these taxes; and, if made, complainants apprehend no danger from such threat, as the bill in this cause was not filed until July, 1896,—more than four months after the passage of the delinquent act. And it is manifest that the threatened action was under the delinquent act of March 3, 1896, and not against the bank's cashier under the previous act. Complainants' right to sue in behalf of their stockholders under the act of March 6, 1890, may be conceded, for the sake of argument; but no case for injunction against the state's officers would exist upon the pleadings, as the only allegation of the bill justifying the granting of an injunction is the one as to the apprehension of a multiplicity of suits. Such ground for injunction could not be availed of by the banks under the act, as the banks, and not their stockholders, would be proceeded against, and in single actions, at the suit of the state against the banks' cashiers, respectively, and in which cases could be raised all the questions sought to be settled by way of injunction in these causes. The complainants do not charge that any threatened action has been or is about to be taken either against the bank or its cashier, but expressly negative the idea of either, and say that they are not advised as to what is the state's purpose in these respects. Specific allegations as to the certainty of litigation ought at least to be made, to justify a court of equity interfering to prevent a multiplicity of suits. Courts of equity are seldom called upon to exercise a more delicate power than that of granting injunctions to enjoin the collection of a state's revenue. Such power on the part of courts is expressly inhibited by the federal statutes as to taxes due the United States, and federal courts should proceed with great caution in exercising such power as to taxes due the state. It is a prerogative the exercise of which may result in great harm, and only where the right is clear, the necessity for action urgent, and the inadequacy of any other remedy apparent, should a court of equity interpose. The supreme court of the United States, in Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works, 172 U. S. 32, 37, 19 Sup. Ct. 90, 92, 43 L. Ed. 354, 356, speaking through Mr. Justice Gray, said:

"The collection of taxes assessed under the authority of a state is not to be restrained by writ of injunction from a court of the United States unless it clearly appears not only that the tax is illegal, but that the owner of the property taxed has no adequate remedy by the ordinary processes of the law, and that there are special circumstances bringing the case under some recognized head of equity jurisdiction."

In Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65, a citizen of the state of New York, owning shares in a national bank doing business in the city of Chicago, sought by bill in equity to enjoin the collection of a tax assessed by the city of Chicago upon its shares, for the reason, among others, that the tax was unconstitutional and void,

because not equal and uniform, as required by the constitution of the state, and because, also, such shares were not taxable by the city at the domicile of the defendant. The supreme court, through Mr. Justice Field, at page 112, 11 Wall., and at page 66, 20 L. Ed., said:

"Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the presentive remedy of injunction can be invoked."

In the State Railroad Tax Cases, 92 U. S. 575, 613, 615, 23 L. Ed. 669, 674, Mr. Justice Miller, speaking for the supreme court, after stating that it had been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of itself, gave the right of injunction in a court of equity, said:

"We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes. But we may say that, in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisprudence, and that mere errors or excess in valuation, or hardship or injustice of the law, or any grievance which can be remedied by a suit at law, either before or after payment of taxes, will not justify a court of equity to interpose by injunction to stay the collection of a tax."

Schulenberg-Boeckeler Lumber Co. v. Town of Hayward (C. C.) 20 Fed. 422.

Stopping the state's revenue is a serious matter, except in cases where it is essential to the maintenance of the citizen's rights; and the power of a court of equity to do full justice in such a case (to the taxpayer, on the one hand, or to the state, on the other) is so difficult of accomplishment, if, indeed, it can be done at all, that in doubtful cases the injunction should be denied. The case at hand is a striking illustration of the embarrassments resulting from the intervention of courts of equity by writs of injunction. Aside from other complications that might arise by reason of the inability of the court properly to deal with the matter of taxation, it appears that the state has not been paid its taxes either by the bank or its stockholders. Its hand is stayed at the instance of the bank. The stockholders from whom the tax is due are not before the court, and the result is, even in the event of a favorable decision to the state, it may lose all its dues entirely.

This brings us to the consideration of the ..ct for the collection of delinquent taxes of the 3d of March, 1896, also assailed in the original bill. Have the complainants a right to institute these suits in behalf of their stockholders to prevent the enforcement of the provision of this act? They manifestly have not. As before stated, the object of the act is to provide for the collection of delinquent taxes due by the stockholders of banks under the act of March 6, 1890; and, if the portion of the said act in reference to collecting the taxes due by the stockholders from the cashier of the bank is not repealed by implication, it is a remedy cumulative to that authorized by that act, and

under it no duty or liability is imposed upon the banks, further than that the banks are authorized, should they so desire, upon receiving a list of the assessments against their stockholders remaining in arrears, to pay the same to the auditor of public accounts. It is entirely optional with the banks to do this. No requirement in this regard is made of them, and no liability is prescribed for their failure to elect to pay. Upon the bank's not electing to pay the money, it is the duty of the auditor to furnish a copy of such list to the attorney general, who shall proceed by motion in the circuit court of the city of Richmond against the individual stockholder, after giving the notice prescribed by the statute, to collect such taxes. The stockholder thus proceeded against could not, upon the theory of preventing a multiplicity of suits, seek the intervention of a court of equity to restrain the collection of this tax. Upon the payment of the taxes his entire claim ought to be determined in a single action. Dows v. City of Chicago, 11 Wall. 108, 112, 20 L. Ed. 65; Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works, 172 U. S. 38, 19 Sup. Ct. 90, 43 L. Ed. 354. And, moreover, a multiplicity of suits refers not to the number of persons liable to suits, but to the number of suits which may be instituted against a particular person. The taxpayer, aside from the other remedies afforded him under the law,—of paying under protest, and suing to recover the money, or suing the officer who makes the collection, for damages,—is given a special remedy in a court of justice for the collection of the tax due by him, in which every defense he seeks to make here can be made, including the existence of a federal question, and the case carried through the state courts, if need be, into the federal courts. The bank, upon whom no liability is thus imposed, should not be permitted, in behalf of its stockholders, to do what the stockholders themselves could not do. Cases in which banks are allowed to institute suits of the character here sought to be maintained in behalf of their stockholders are clearly distinguishable from these cases in so far as the right to sue under the act in reference to delinquent taxes is concerned. The leading case on the subject is that of Cummings v. Bank, 101 U. S. p. 154, 25 L. Ed. 903. In that case Mr. Justice Miller, at page 156, 101 U. S., page 904, 25 L. Ed., after reciting what the bank was required to do by the act of the state of Ohio (viz. among other things, to report to the auditor of the county for assessment the names of all its original stockholders, their places of residence, amounts held by each of them, with all facts necessary to a fair assessment, the authority of the bank to pay the tax on the shares of the stockholder, and deduct the same from the dividends or any funds of the stockholders in its hands, or coming afterwards in its possession, and forbidding the bank to pay any dividends on its stock, or transferring it or permitting it to be transferred on its books, as long as said tax remained unpaid), said:

"It is true, the statute of Kentucky went further than the Ohio statute, by declaring that the bank must pay the tax, while the latter only says it may. But the Ohio statute, by the remedies it provides, places the bank in a condition where it must pay the tax, or encounter evils of a character which create a right to avoid them by instituting legal proceedings to ascertain the extent of its responsibility before it does the acts demanded by the statute. It is next suggested that since there is a plain, adequate, and complete remedy

by paying the money under protest, and suing at law to recover it back, there. can be no equitable jurisdiction of the case. The reply to that is that the bank is not in a condition where the remedy is adequate. In paying the money it is acting in a fiduciary capacity as the agent of the stockholders,— an agency created by the statute of the state. If it pays an unlawful tax assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank, as a corporation, is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of litigation should not fall. If it pays, it may be subject to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws, and subject itself to suit by the state. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

So far as the collection of this tax is concerned, under the act for the collection of delinquent taxes, no obligation or liability whatever is imposed on the bank; nor is it placed in any fiduciary relation as to its stockholders in reference to such tax by said act, or, indeed, placed in any position where it can be liable either for doing or for not doing any act whatever. Assuming that the bank may interpose in behalf of its stockholders, under this act, something more than a mere suggestion that, by so doing, it would prevent a multiplicity of suits, ought to appear, to justify a court of equity in restraining a state in the collection of its taxes. If the stockholders themselves can, by having the state pursue the remedy provided by it for the collection of these taxes, and in such proceedings, secure their rights, the bank, in any event, in a matter in which it is not personally involved, should not be allowed to interpose, except to prevent a manifest miscarriage of justice.

We are now to consider the second act of the 3d of March, 1896, under which the taxes for the years 1896–97 have been assessed. This is an amendment of section 17 of the original act, and the amendment provides an entirely different method and plan for assessing and collecting taxes against the stockholders in national banks; and as to it what has been said of the right of a bank to interpose in behalf of its stockholders under the act of the same date in reference to delinquent taxes is not intended to apply, as under this act, upon a proper case made for injunction, it would seem that the bank, in behalf of its stockholders, would have a right to interpose by suit in equity, for upon it serious obligations are imposed, and against it heavy penalties enacted. Whether the mere allegation of the prevention of a multiplicity of suits would of itself suffice to justify the court's interposition by injunction in the collection of the state's revenue need not be passed upon in this case, with the view the court takes of this statute. The right of the bank so to proceed under this act in a proper case being apparent, it is necessary to pass upon the validity of this act. In determining this question the court has naught to do with the policy or wisdom of the act in question, but alone with the power of the state to pass it. It is assailed chiefly because of the separate tax upon the bank's real estate, the failure to allow its stockholders to deduct the debts due by them for their stock before assessing it for taxation, as is done in reference to other classes of personal property in the state, and because of the alleged

denial of due process of law to the taxpayer in the assessment of the taxes. The taxation by the state of the real estate of the bank, in addition to that placed upon the shares of the stockholders, is not unequal taxation, in the sense contemplated by the constitution, and does not, therefore, invalidate the act. Section 5219 of the Revised Statutes contemplates that the tax on real estate may be imposed independently of the tax upon the share of the stockholder. It may be said, in passing, that the taxation of the shareholders in national banks, independently of the real estate owned by the banks, is the same as that adopted in reference to taxation of the shareholders in state banks, and, at least, does not appear to have been intended as any discrimination against national bank shares. The real estate is considered a part of the bank's capital or property, rather than that of the shareholders' interest in its certificate of stock. This seems to have been the view taken by the supreme court in National Bank v. Com., 9 Wall. 353, 358, 19 L. Ed. 701, 702. Mr. Justice Miller, speaking for the court, said:

"In the several recent decisions concerning the taxation of the shares of national banks, as regulated by sections 40 and 41 of the act of congress of the 3d of June, 1864, it has been established as the law governing this court that the property or interest of a stockholder in an incorporated bank commonly called a 'share,' the shares in their aggregate totality being called sometimes the 'capital stock' of the bank, is a different thing from the moneyed capital of the bank held and owned by the corporation. This capital may consist of cash, or of bills and notes discounted, or of real estate combined with these. The whole of it may be invested in bonds of the government, or in bonds of the state, or in bonds and mortgages."

Com. v. Charlottesville Perpetual Building & Loan Co., 90 Va. 792, 793, 20 S. E. 364.

It is insisted that the statute is void because the tax assessed is greater than that laid by the state of Virginia on other moneyed capital in the hands of individuals residing within the state; the contention being that because the state allows its taxpayers the privilege of deducting before returning for taxation the amount of their individual indebtedness from taxes due by them from all "bonds, notes and other evidences of debts, including bonds due from canals and railroad companies, bonds of counties, cities and towns, and bonds of other states and corporations; demands and claims however evidenced and whether secured by deed of trust, judgment or not,"— therefore such act operates as a discrimination in favor of the owners of that class of property against the owners of shares in national bank stocks. The question of a right of a national bank shareholder to have his indebtedness deducted from his share of the stock before assessment of the same for taxation has recently been decided adversely by the supreme court of appeals of Virginia. Burrows v. Smith, 95 Va. 695, 29 S. E. 674. As to what is moneyed capital, within the meaning of the national banking act, and what will be deemed a discrimination against the shareholders in national banks by reason of allowing a deduction on account of indebtedness in favor of the owners of other classes of personal property, has been so often under review of late by the courts of last resort that any general discussion is unnecessary. Briefly, it may be said that absolute

equality of taxation is not expected, and the purposes of the national banking act are satisfied when exemptions are not made from taxation on the investments in the shares of institutions or individuals carrying on a similar business to that of the bank, and upon persons engaged in operations and investments of a like character as the bank. The act does not make the tax on personalty generally the measure of tax on national bank shares, but the tax on the moneyed capital is like use. Hepburn v. School Directors, 23 Wall. 480, 23 L. Ed. 112; Boyer v. Boyer, 113 U. S. 689, 5 Sup. Ct. 706, 28 L. Ed. 1089; Mercantile Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 237, 10 Sup. Ct. 533, 33 L. Ed. 892; National Bank v. Mayor, etc., of Baltimore, 100 Fed. 24, 40 C. C. A. 254; First Nat. Bank v. Chehalis County, 166 U. S. 440, 17 Sup. Ct. 629, 41 L. Ed. 1069. In the last-named case will be found a very full discussion of the whole subject, with a review of most of the cases bearing thereon, from which it appears that the act in question is not invalid for this reason.

Complainants insist that this act of the 3d of March, 1896, providing a new assessment for taxes against national banks, is void because of the lack of due process of law; and they most vigorously assail this act and the act of the 6th of March, 1890, for this reason. The principles governing the determination of this question under these two acts, by reason of the peculiar terms of the respective acts, depend upon entirely different considerations. Under the first-named act, the constitutionality of which the court deems it unnecessary to pass upon, the assessment seems clearly to be in the nature of a judicial act, and the bank's cashier is made liable for the amount of the tax; but no provision is made for its becoming self-collectible or in the nature of an execution, and it is expressly provided that the same shall be recoverable of the bank's cashier and sureties by motion upon 15 days' notice in the circuit court of the city of Richmond; and the question turns on whether or not this requirement of the state to seek the intervention of a court of justice in the collection of its revenues does not of itself constitute due process of law. Under the second act, upon the assessment being made of the taxes, the tax bills become self-executing and, can be enforced by levy; and the question turns upon the character of the act performed by the assessor in making the assessment,—in a word, whether he acts judicially or otherwise. A careful inspection of the act shows that the assessor performs no judicial act in what he does; the fair interpretation being that the assessment made by him is upon the market value of the stock as reported to him by the bank, and the act itself fixes the amount of the tax; and, under this view, further notice to the taxpayer of the assessment is not required. A most interesting discussion of this whole subject is to be found in the leading case of Hagar v. District No. 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569. In this case Mr. Justice Field, at page 708, 111 U. S., page 667, 4 Sup. Ct., and page 572, 28 L. Ed., in discussing the question of the failure of the statute under which the assessment was made to provide for notice, and the citizen an opportunity to be heard, ordinarily, said:

"But, where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal; and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. As stated by Mr. Justice Bradley in his concurring opinion in Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, 'in judging what is "due process of law," respect must be had to the cause and object of taking,—whether under the taxing power, the power of eminent domain, or the power of assessment, for local improvements, or some of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law," but if found to be arbitrary, oppressive, or unjust, it may be declared to be not "due process of law." ' "

And at page 709, 111 U. S., page 668, 4 Sup. Ct., and page 572, 28 L. Ed., Mr. Justice Field said:

"Of the different kind of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him,—such as poll taxes, license taxes (not dependent upon the extent of his business), and, generally, specific taxes on things, on persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of the evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is, therefore, invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard or bushel or gallon, there is nothing the owner can do which can affect the amount to be collected from him. * * * But where a tax is levied on property, not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. The officers in estimating the value act judicially, and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law, to hear complaints respecting the justice of the assessments."

The bank itself having fixed the market value of its stock, and the statute the amount of the tax, the assessor's duty was a mere ministerial one, and the act is not void because of the lack of due process of law.

Complainants further assail the validity of the act of the 6th of March, 1890, and the amendment thereof of the 3d of March, 1896, because the rate of tax prescribed is not uniform, as required by the constitution of the state, and because, also, the original act is in violation of the provisions of the constitution, in that it fails to state distinctly the amount of the tax levied and the object to which it is to be applied, as required by article 10, § 16, of the constitution of the state. These objections do not appear to be well founded, and the acts themselves have been more than once passed upon by the court of last resort in this state, and, in so far as their validity is concerned under the state constitution, this court will follow the decisions of the state court. Com. v. Charlottesville Perpetual Building & Loan Co., 90 Va. 790, 20 S. E. 364; Burrows v. Smith, 95 Va. 694, 29 S. E. 674; Merchants' & Manufacturers' Nat. Bank v. Pennsylvania, 167

U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236. A decree may be entered, dissolving the temporary restraining orders heretofore granted in these causes, and dismissing the complainants' bills.