# Commonwealth, Appellant, *v.* Union Trust Company of Pittsburgh.

*Taxation—State taxes—Capital stock taxes—Trust companies—Reports—Duties of Auditor General—Act of June 13, 1907, P. L. 640—Banks and Banking.*

1. The report required to be filed by a trust company under the Act of June 13, 1907, P. L. 640, is intended to furnish the basis upon which the Auditor General shall fix the taxable value of the shares of stock but it is not conclusively binding upon him, and if he is not satisfied with its correctness, it is his duty to inquire further and make settlement upon the actual value of the stock as shown by the facts.

2. The Act of February 11, 1895, P. L. 4, transferring supervisory duties in matters relating to banking institutions from the Auditor General to the Commissioner of Banking in no way interferes with the power of taxation to be exercised by the Auditor General, who in the performance of his duties in this respect exercises his own functions without reference to what the Commissioner of Banking may do in matters pertaining to the supervision and regulation of banking institutions. In the exercise of his powers the Auditor General is not bound by the rules and regulations of the banking department.

3. Where upon settlement of an account for taxes upon the capital stock of a trust company the return as filed by the company appraises the value of its shares at $20,097,466.50, but it appears from data contained in the report that the company appraised securities representing undivided profits at their cost price and that their reported value in the tax year was greatly in

excess of such price, which difference the company recognized and carried as a reserve account, the Auditor General may fix such higher value upon these securities as a basis for ascertaining the actual value of the shares.

Argued May 20, 1912. Appeal, No. 22, May T., 1912, by plaintiff, from judgment of C. P. Dauphin County, Commonwealth Docket, 1910, No. 172, for defendant on case stated in case of Commonwealth of Pennsylvania v. Union Trust Company of Pittsburgh. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from settlement of an account by the Auditor General and State Treasurer for taxation of the capital stock of a trust company. Before MCCARRELL, J.

The opinion of the Supreme Court states the case.'

*Error assigned*, among others, was the judgment of the court.

Wm. M. Hargest, Assistant Deputy Attorney General, with him *John C. Bell*, Attorney General, for appellant, cited : Mayor and Common Council of Newark v. Tunis, 78 Atlantic Repr. 1066.

*Samuel McClay*, with him *Reed, Smith, Shaw & Beal*, for appellee, cited : Jennery v. Olmsted, 36 Hun. 536; People v. Savings Union, 72 Cal. 199 (13 Pac. Repr. 498).

OPINION BY MR. JUSTICE ELKIN, July 2, 1912 :

The question involved in this case relates to the taxation of the shares of stock of a trust company under the Act of June 13, 1907, P. L. 640. This act was intended to put trust companies upon practically the same basis as banking institutions for the purpose of taxation. Bank stocks are taxed under the Act of July 15, 1897, P. L. 292, and the method of ascertaining

and fixing the value of shares by this act was adopted by the legislature in the Act of 1907 as applied to title insurance and trust companies. The Act of 1907 provides that "the value of each share of stock to be ascertained and fixed by adding together so much of the capital stock paid in, the surplus, and undivided profits as is not invested in the shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, and dividing this amount by the number of shares of such title insurance or trust company, and pay said tax into the State treasury, on or before the first day of March in each year, the shares, and so much of the capital stock, surplus, profits, and deposits of such company as shall not be invested in real estate, shall be exempt from all other taxation under the laws of this Commonwealth." In the present case the appellee company filed its report in the office of the Auditor General in February, 1909, appraising the value of its shares at $20,097,466.50, and elected to pay and did pay to the State Treasurer five mills on the value of the shares so appraised by its own officers prior to March 1, 1909. By so doing appellee was entitled to a deduction for so much of its capital, surplus and profits as was invested in shares of stock of other corporations liable to pay a capital stock tax or tax on shares, and to claim an exemption from all other taxation upon its capital stock, surplus, profits, and deposits not invested in real estate. The legislature evidently intended to tax shares of stock in banks and trust companies for state purposes, and to set at rest the somewhat mooted question whether the deposits of such institutions invested in personal securities should be subject to local taxation like moneys at interest in the hands of individuals. Banks and trust companies under the Acts of 1897 and 1907 by paying a state tax upon the value of their shares to be ascertained as provided in these acts are relieved from local taxation, and this fact must be given due consideration in de-

termining what the legislature intended by providing that the value of each share shall be fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares. The contention of the Commonwealth is that the capital paid in, the surplus and undivided profits represent all the property and assets of the trust company over and above its liabilities, and that it is the duty of the Auditor General to ascertain and fix this value for the purpose of determining the taxable value of the shares. On the other hand, it is argued with great force by the learned counsel for appellee, that the power of the Auditor General is limited by the Act of 1907 to the exercise of his right to ascertain the correctness of the report submitted by the company, showing capital paid in, surplus and undivided profits, and if found to be correct, add them, and divide the total by the number of shares outstanding. This theory would make the Auditor General a ministerial officer with practically no power in the settlement of taxes against trust companies except to see that the addition and division of their officers were correct. This is clearly an erroneous view of the powers and duties of taxing officers. The report which the act requires a trust company to make is intended to furnish a basis upon which the Auditor General shall fix the taxable value of the shares, but it is not conclusively binding upon him. He may or may not be satisfied with its correctness, and if he is not, it is his duty to make further inquiry. In the present case the Auditor General was not satisfied with the appraised value of the shares submitted by the officers of the company, and from data contained in the report filed he proceeded to settle an account by increasing the total value of all the shares to $22,151,415.50. That he had the power to increase the value of the shares, if the facts warranted it, there can be no doubt. To hold otherwise would mean that the corporation subject to the tax is vested with the

power to appraise the value of shares and that the taxing officer had no duty to perform except to solve a very simple problem in arithmetic. Nothing of this kind was intended by the Act of 1907, and no reasonable interpretation of its language warrants such conclusion. The power to ascertain and fix the taxable value of shares is vested in the Auditor General, but it must be exercised in the manner prescribed by law. He cannot act arbitrarily without regard to the facts or without sufficient data upon which to base his conclusions. He must also follow the statutory method in determining the taxable value of the shares. This means in the present case that the actual value of each share must be determined upon the basis of the capital paid in, surplus and undivided profits; but it does not mean that the Auditor General must accept the book value, or any other value, reported by the officers of the company, as final and conclusive in determining the taxable value of the shares. Ordinarily, it may be assumed, that the value of the shares reported by the company, would be a fair approximation of their actual value, and no doubt in most instances would be satisfactory to the Auditor General, but if he has reason to believe that the value of the capital paid in, surplus and undivided profits, is greater than the amount reported, it is his duty to inquire and make settlement upon the basis of the actual value as shown by the facts.

It is argued for appellee that the power to direct what shall constitute surplus and undivided profits is exclusively vested in the Commissioner of Banking by the Act of 1895, and that the Auditor General is bound in this respect by the rules and regulations of the banking department. We cannot accept this view of the law. It is true that prior to the creation of the banking department the Auditor General exercised certain supervisions in matters pertaining to banking institutions, and that all of these duties, except those relating to taxation, were transferred to the Commissioner of Banking

by the Act of 1895. The power of taxation was reserved to the Auditor General when the other powers and duties formerly imposed upon this officer were vested in the Commissioner of Banking. The Act of Feb. 11, 1895, P. L. 4, in no way interfered with the power of taxation to be exercised by the Auditor General, who in the performance of his duties in this respect exercises his own functions without reference to what the Commissioner of Banking may do in matters pertaining to the supervision and regulation of the business of banking institutions. In the exercise of his powers the Auditor General is not bound by the rules and regulations of the banking department. The provision in the Act of 1895 relating to visitorial power has no reference to taxation which in express terms was reserved to the Auditor General when other powers were transferred.

This brings us to the consideration of the only question in the case about which there can be any doubt, and that is, how shall the Auditor General determine what is the actual value of the capital paid in, the surplus and the undivided profits? If each of these elements of value was represented by cash on hand the question would be of easy solution, but in the conduct of a banking business this rarely, if ever, happens; or, if the funds were invested in securities worth their face value, no difficulty would arise. But where as in the present case good securities were purchased for much less than their face value for investment account, and carried as such, a different question is presented. The Act of 1907 is a revenue statute and in the interpretation of its provisions this thought should be kept in mind. Technical, or etymological, definitions of words are of little if any help in determining what the legislative language means in a revenue statute, and for this reason the cases cited by appellee on the question of what constitutes undivided profits are not convincing authorities under the facts of the present case. Some one must ascertain and fix the value of capital

paid in, surplus and undivided profits in order to determine the value of the shares, otherwise there would be no basis for taxation. The report required to be filed by a trust company under the Act of 1907 is the first step taken, but it is only a means to an end, the end being to ascertain the actual value of the shares by the Auditor General, whose duty as an accounting officer requires him to make the settlement and collect the tax. He is not required to accept the value placed upon the securities carried as undivided profits by officers of the trust company and may fix such value upon these securities or investments as the facts warrant. This is what was done in the present case by the Auditor General and we think the facts were sufficient to sustain the valuation. The report shows that the appellee company considered the securities worth what the Auditor General found their value to be, and it looks like a mere quibble in the administration of tax laws to say that securities representing undivided profits should be taxed at two million dollars less than their reported value in the tax year because the trust company had made a good bargain in purchasing them for less than their face value. That the appellee considered the securities representing undivided profits worth their appraised value, is shown by what was done in carrying on the books as a reserve account the difference between cost and actual value, which valuation the Auditor General adopted. Nothing said in Com. v. Mortgage Trust Company, 227 Pa. 163, was intended to announce any different rule for the valuation of shares in companies of the kind involved in the case at bar.

Judgment reversed and record remitted with directions to enter judgment upon the valuation of the shares as fixed by the Auditor General.