## Emergency Profits Tax.  No. 1.

Companies which are made subject to the tax imposed by the Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071, are included within the term "corporation," as such term is used in the Act of June 28, 1923, P. L. 876, and are subject to the emergency profits tax imposed by the latter act.

Department of Justice.  Opinion to Hon. Samuel S. Lewis, Auditor General.

JOHN ROBERT JONES, Dep. Att'y-Gen., July 22, 1924.—You have requested the opinion of this department upon the question of whether or not companies which are made subject to the tax imposed under and by the provisions of the Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071, are included within the term "corporation," as such term is used in the Act of June 28, 1923, P. L. 876, and are subject to the tax imposed under and by the provisions of the latter act.

The Act of June 13, 1907, P. L. 640, provided that ". . . every company incorporated under the provisions of section twenty-nine of an act entitled 'An act to provide for the incorporation and regulation of certain corporations,' approved April twenty-ninth, one thousand eight hundred and seventy-four, and its supplements, for the insurance of owners of real estate, mortgages, and others interested in real estate, from loss by reason of defective titles, liens and incumbrances; and every company entitled to benefits of, and every company having any of the powers of companies entitled to the benefits of, an act entitled 'An act conferring upon certain fidelity, insurance, safety deposit, trust and savings companies the powers and privileges of companies incorporated under the provisions of section twenty-nine of an act entitled 'An act to provide for the incorporation and regulation of certain corporations,' approved April twenty-ninth, Anno Domini one thousand eight hundred and seventy-four, and of the supplements thereto,' approved June twenty-seventh, one thousand eight hundred and ninety-five, commonly known as title insurance, or trust, companies," should, on or before June 20th in every year, make a report to the Auditor General in the manner set forth in the said act, in which report was to be set forth "the full number of shares of the capital stock subscribed for or issued by such company, and the actual value thereof," which actual value was to be ascertained in the manner provided in the act.  This having been done, it thereupon became the duty of the Auditor General "to assess such shares for taxation at the rate of 5 mills upon each dollar of the actual value thereof, the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares."

The act further provided that "It shall be the duty of every such company, within a period of forty days after the date of such settlement by the Auditor General, at its option, to pay the amount of said tax to the State Treasurer from its general fund, or collect the same from its shareholders and pay over to the State Treasurer."

The act also contained the following provision: ". . . And provided further, That in case any such company shall collect annually from the shareholders thereof, or from the general fund of said company, said tax of five mills on the dollar upon the value of all the shares of stock of said company, the value of each share of stock to be ascertained and fixed by adding together so much of the capital stock paid in, the surplus and undivided profits as is

not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, and dividing this amount by the number of shares of such title insurance or trust company, and pay said tax into the State Treasury on or before the first day of March in each year, the shares, and so much of the capital stock, surplus, profits and deposits of such company as shall not be invested in real estate, shall be exempt from all other taxation under the laws of this Commonwealth."

The act contained additional provisions imposing various duties upon officers of the company in the matter of filing reports, furnishing information to the Auditor General, the imposition of penalty upon the failure or refusal of the officers of the company to perform certain duties, the payment of the tax, etc.   These provisions had for their purpose a proper enforcement of the act.

As to the purposes and intent of this act of assembly the Supreme Court has said: ". . . This act was intended to put trust companies upon practically the same basis as banking institutions for the purpose of taxation. Bank stocks are taxed under the Act of July 15, 1897, P. L. 292, and the method of ascertaining and fixing the value of shares by this act was adopted by the legislature in the Act of 1907 as applied to title insurance and trust companies. . . . In the present case the appellee company filed its report in the office of the Auditor General in February, 1909, appraising the value of its shares at $20,097,466.50, and elected to pay, and did pay, to the State Treasurer 5 mills on the value of the shares so appraised by its own officers prior to March 1, 1909.   By so doing, appellee was entitled to a deduction for so much of its capital, surplus and profits as was invested in shares of stock of other corporations liable to pay a capital stock tax or tax on shares, and to claim an exemption from all other taxation upon its capital stock, surplus, profits and deposits not invested in real estate.   The legislature evidently intended to tax shares of stock in banks and trust companies for State purposes, and to set at rest the somewhat mooted question whether the deposits of such institutions invested in personal securities should be subject to local taxation, like moneys at interest in the hands of individuals.   Banks and trust companies, under the Acts of 1897 and 1907, by paying a State tax upon the value of their shares to be ascertained as provided in these acts, are relieved from local taxation, and this fact must be given due consideration in determining what the legislature intended by providing that the value of each share shall be fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares: . . ."   Com. v. Union Trust Co. of Pittsburgh, 237 Pa. 353, 354, 355, 356.

This act of assembly was amended by the Act of July 11, 1923, P. L. 1071, by effecting the following changes, to wit:

1. Changing the date on or before which the company is required to make its report to the Auditor General from the *twentieth day of June* in each and every year to the *last day of February*.

2. Providing that the actual value of the shares of stock is to be ascertained as of December 31st preceding.

3. Providing that the actual value of each share of stock is to be ascertained and fixed as follows: "by adding together *so much of* the amount of capital stock paid in, the surplus and undivided profits *as is not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares*, and dividing this amount by the number of shares." The underscored words indicate the amendments, the effect of which is to

provide the same method for ascertaining and fixing the value of the shares as was provided in the said Act of 1907, in the event that the payment of the tax was made on or before the first day of March in each year.

4. Changing the requirement that the Auditor General, after having fixed the value of the shares of stock and settled the account, shall transmit a copy of such settlement to the president, cashier or treasurer of the company, by striking out the word "cashier" and substituting in lieu thereof the word *secretary*.

5. Changing the period of time after the date of the settlement within which it became the duty of the company to pay the amount of the tax to the State Treasurer from its general fund, or to collect the same from its shareholders and pay it over to the State Treasurer, from forty days to sixty days.

6. Reducing the penalty of 50 per centum of the amount of the tax, which penalty is imposed for the failure or refusal of the company to make the required report or to pay the tax at the time specified, or for the making of any false statement in the report, or failing or refusing by its officers to appear before the Auditor General as required in the act, or for failing or refusing to produce its books for examination when required to do so by the Auditor General, to 10 per centum.

7. Changing the proviso in the said Act of 1907, whereby the company became responsible to the Commonwealth for the amount of the tax assessed against the shareholders of the company by reason of neglect or refusal of the president, cashier or treasurer of the company to post a copy of the settlement in a conspicuous place in the company's place of business immediately upon receipt of the same, so as to give notice to the shareholders, by reason of which neglect or refusal the said president, cashier or treasurer was adjudged to be in default, by striking out the word "cashier" and substituting in lieu thereof the word *secretary*.

8. Striking out of the last proviso of the said Act of 1907 certain portions thereof and adding new language thereto, the effect of which is, if the payment of the tax be made within a period of sixty days after the date of settlement, to allow the same exemption as was allowed in the said Act of 1907, when the payment of the tax was made on or before the first day of March in each year.

It will be observed that the subject of taxation, both in the Act of June 13, 1907, P. L. 640, and the amending Act of July 11, 1923, P. L. 1071, is the same; that is to say, the shares of stock. It is true that in the amending Act of 1923 the method of determining the actual value of the shares is changed in the manner indicated, but the subject of taxation is exactly similar.

The Act of June 28, 1923, P. L. 876, provided in section 2 as follows:

"Imposition of Emergency Profits Tax. Every corporation shall be subject to, and pay into the Treasury of the Commonwealth, an emergency corporation profits tax, at the rate of one-half of one per centum ($\frac{1}{2}\%$) per annum, for two years, upon each dollar of the net income of such corporation, during the calendar years one thousand nine hundred and twenty-three and one thousand nine hundred and twenty-four, or in the event that such corporation is permitted by the Auditor General to make its report under the provisions of this act as of its fiscal year instead of the calendar year, then the tax imposed shall be paid on the net income of such corporation during its two fiscal years commencing at any time during the year one thousand nine hundred and twenty-three and ending at the end of the corresponding day in the year one thousand nine hundred and twenty-five.

"The tax hereby imposed shall be in addition to all taxes now imposed on any corporations under the provisions of existing laws."

It will be observed that the tax which is called "an emergency corporation profits tax" is a tax "at the rate of one-half of 1 per centum ($\frac{1}{2}\%$) per annum, for two years, upon each dollar of the net income of such corporation." I think it is plain that the subject of the tax imposed by this act is the net income of the corporation as the term "net income" is defined in the said act of assembly.

In the 1st section of this act it is provided: "That the term 'corporation,' as used in this act, shall include every corporation having capital stock, . . . now or hereafter organized or incorporated by or under any laws of this Commonwealth. . . ." It will be observed that this language, standing by itself, would include within it such corporation as is made subject to the tax imposed by the Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071. Section 1 sets forth expressly certain associations, corporations, etc., which are not to be regarded as included within the term "corporation," as used in the act, and that none of such excluded corporations is a corporation made subject to the said Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071. This portion of section 1 reads as follows: ". . . The term shall not include building and loan associations, nor any corporation, joint-stock association, limited partnership, or company, now required to pay a tax upon its gross premiums under the provisions of section twenty-four of the act, approved the first day of June, one thousand eight hundred and eighty-nine (Pamphelet Laws four hundred and twenty), entitled 'A further supplement to an act entitled 'An act to provide revenue by taxation,' approved the seventh day of June, Anno Domini one thousand eight hundred and seventy-nine.' "

This language manifests a clear intent to include under the provisions of the said section 1 as being subject to the said tax such corporations as are subject to the said Act of June 13, 1907, P. L. 640, and its amendment of July 11, 1923, P. L. 1071. As if to remove all doubt, it is expressly provided in section 2 of the act as follows: "The tax hereby imposed shall be in addition to all taxes now imposed on any corporations under the provisions of existing laws." I think this is conclusive of the question.

In answer to a contention which may be made to the effect that double taxation results by reason of the fact that in determining the value of the shares of stock of the company under the provisions of the said Act of 1907, as amended by the said Act of July 11, 1923, "so much . . . of the undivided profits as is not invested in shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares" is included, and in the determination of "net income" made subject to the tax imposed by the said Act of June 28, 1923, "profits" are included, it is sufficient to say, assuming that double taxation does so result, that double taxation is not forbidden legislation where there is a clear intent to impose it. (See Com. v. Semet Solvay Co., 262 Pa. 234; Com. v. Shenango F. Co., 268 Pa. 283, and cases cited therein; Com. v. Fall Brook Coal Co., 156 Pa. 488, 495.) But double taxation does not so result. There can be no double taxation where the subjects of taxation are dissimilar. (See cases cited above.) As hereinbefore stated, the subject of taxation in the Act of 1907 and its amendment of 1923 is "shares of stock," and the subject of taxation in the Act of June 28, 1923, is "net income," as defined in such act.

I do not think that there is any force in a contention that the said Act of July 11, 1923, amending the Act of June 13, 1907, having been approved by

the Governor at a date subsequent to the approval of the Act of June 28, 1923, there is an implied intent on the part of the legislature to remove such corporations from the clear language of the said Act of June 28, 1923. As I have stated, the Act of July 11, 1923, amending the said Act of June 13, 1907, did not change the subject of taxation whatsoever. Its purpose was not to affect existing law as to the subject of taxation. It is not to be presumed that the legislature, by its passage of the Act of July 11, 1923, intended by implication to remove the particular corporations made subject to the tax imposed thereunder from the provisions of the Act of June 28, 1923. It is within reason to assume that if such had been the intent of the general assembly, it would have declared such intent in express language, as it did in the case of certain other corporations in section 1 of the said Act of June 28, 1923. See Com. v. Mortgage Trust Co., 227 Pa. 163, 182.

I am, therefore, of the opinion that companies which are made subject to the tax imposed under and by the provisions of the Act of June 13, 1907, P. L. 640, as amended by the Act of July 11, 1923, P. L. 1071, are included within the term "corporation" as such term is used in the Act of June 28, 1923, P. L. 876, and are subject to the tax imposed under and by the provisions of the latter act.  From C. P. Addams, Harrisburg, Pa.