Commonwealth *v.* Mellon National Bank and
Trust Company, Appellant.

Argued May 24, 1965. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused March 24, 1966.

*Carl F. Chronister,* with him *A. Sieber Hollinger,*
*William T. Marsh,* and *Reed, Smith, Shaw & McClay,*
for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

*Charles J. Biddle,* with him *Leslie M. Swope,* and *Drinker, Biddle & Reath,* for amicus curiae.

OPINION BY MR. JUSTICE COHEN, January 17, 1966:

This is an appeal by Mellon National Bank and Trust Company (Mellon) with respect to its shares tax report for the year 1959. The shares tax is imposed by the Act of July 15, 1897, P. L. 292, as amended, 72 P.S. §1931, and is "at the rate of eight mills upon each dollar of the actual value" of the shares.

In computing its shares tax for 1959,[1] Mellon added its capital stock, surplus and undivided profits as shown on its books. To this it added its federal tax reserve for losses on loans and discounts and arrived at a total of $306,541,525.84. Mellon then subtracted (1) the difference between the book and market values of its securities ($429,112) and (2) the average reserve for its actual losses on loans and mortgages ($37,154) and (3) the difference between the book and market values of its FHA and VA mortgages ($11,203,012.72). This resulted in a taxable value of $294,872,247.12, and a per share taxable value of $115.26. The value of exempt shares—$21,002,907.72—was then subtracted, leaving a value subject to tax of $273,869,339.40 and a tax of $2,190,954.71.

The Commonwealth disputed the taxpayer's computation in two respects. First, it disallowed the subtraction of the $11,203,012.72 difference between the book and "market values" of the FHA and VA mort-

---

[1] The computations referred to herein are those submitted by each party following the trial in the court below and reflect certain changes from the computations contained both in the original report and in the settlement.

gages; and, second, it added back an amount of $137,-
639 representing the total discount on certain mort-
gages purchased by Mellon from others and shown on
its books as a liability. These two changes produced
a total actual value of $306,212,989 and, after eliminat-
ing the value of the exempt shares, a taxable actual
value of $284,402,747. The tax on this value came to
$2,275,221.98.

The court below agreed with the Commonwealth,
and Mellon has appealed.

In reducing the book value of its FHA and VA
mortgages, Mellon relied on an appraisal made for it
by an independent national mortgage broker. This ap-
praisal indicated that there existed a substantial and
well-defined market throughout the country for FHA
and VA mortgages and that as of December 31, 1959,
market values were quite depressed, principally be-
cause of the issuance by the United States Government
of a high interest rate bond which attracted much of
the money which normally would be available to pur-
chase FHA and VA mortgages. The result of this de-
pressed state of the market was to reduce temporarily
the market value of the FHA and VA mortgages held
by Mellon to about 84% of their face book value. The
facts further indicate, however, that Mellon has had
to foreclose on only a negligible percentage of the FHA
and VA mortgages held by it and that it sold none of
them in 1959 (or in 1960 and 1961), thus indicating
that Mellon generally held a mortgage until maturity
and received the face value therefor. In the light of
these factors which indicate that the FHA and VA
mortgages had an actual value to Mellon equal to their
face value, Mellon nevertheless contends that it should
be permitted a reduction and to set the actual value
at the appraised market value.

In *Commonwealth v. Butler County National Bank,*
376 Pa. 66, 101 A. 2d 699 (1954), we upheld the Com-

monwealth's action in adding unrealized appreciation based upon current market values to the cost of certain investment securities in order to determine the "actual value" of the bank's shares. We concluded that such an addition contributed to a more accurate determination of the actual value. But the point in that decision, as well as in the earlier case of *Commonwealth v. Union Trust Co.*, 237 Pa. 353, 85 Atl. 461 (1912), was that the taxing officials must view each case with a single purpose, that of determining the "actual value" of the shares.

It was strongly contended by the appellant in *Commonwealth v. Butler County National Bank*, supra, that the Legislature by the Act of 1897 intended that the fiscal officers of the Commonwealth should determine the amount of capital stock paid in, the surplus and undivided profits only from the books of the bank provided the books are kept in accordance with proper accounting procedures (which would not permit banks to consider and reflect on their books unrealized appreciation of assets). We held that, since the Act lays the tax on the "actual value" of the bank shares, the Commonwealth's fiscal officers are not restricted to only what the bank books show and that the fiscal officers are not prohibited from ascertaining independently what the capital stock paid in, the surplus and undivided profits of a taxpayer bank actually amounted to. Of course, since the fiscal officers are not restricted to the books of the taxpayer bank in determining the actual value of the bank shares, it is quite proper for a taxpayer bank itself to go outside its books in order to determine the actual value of its shares.

The taxpayer here has gone outside of the books and seeks to value its VA and FHA mortgages in the same manner that marketable securities are valued. Even accepting the taxpayer's contention that the evidence would establish the existence of a nationwide market

or exchange for VA and FHA mortgages, however, we find nothing in the Act of 1897 or our prior decisions which *requires* the fiscal officers of the Commonwealth to accept the values prevailing in this market unless doing so contributes to a more accurate determination of the actual value of Mellon's shares. Considering the facts that Mellon's actual experience does not justify any such conclusion, that conventional mortgages (those mortgages other than VA and FHA) would continue to be valued at their book values, and that the depressed values testified to seem to have been a product of an unusual and temporary market situation rather than a symptom of some real loss in value, we must conclude that the Commonwealth's procedures for taxing VA and FHA mortgage loans at book value contributes to a more accurate determination of the actual value of the Mellon's shares.

In view of our conclusion in this matter, it follows that the Commonwealth was also correct in adding back the $137,639 in discount on the mortgages purchased from other lenders. Only in this way is their face value reflected in the computation of tax.

The judgment of the court below is affirmed.

Mr. Justice EAGEN concurs in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I believe that the Mellon National Bank and Trust Company accurately determined and computed the *actual* value of its shares of stock in its Shares Tax report* for the year 1959. The Commonwealth has no legal or moral right to ascertain the *"actual* value" of a bank's capital stock by use of market value when that

---

* Required by the Act of July 15, 1897, P. L. 292, as amended, 72 P.S. §1931 et seq., for Banks and Savings Institutions, and the Act of June 13, 1907, P. L. 640, as amended, 72 P.S. §1991, for Title Insurance and Trust Companies.

method of determination of value is to its advantage, but to ascertain *actual* value on the basis of book value when that method of valuation would be more profitable taxwise. The Commonwealth produced no testimony which would justify (1) its valuing FHA and VA mortgages at face value when there was an active market for such securities, which was substantially below face value,* and (2) its use of an entirely different yardstick, i.e., market value, for valuing all other marketable securities. The Commonwealth cannot blow hot and cold unless there be some factual or legal justification for differentiating one type of marketable asset from another.

For these reasons, I dissent.

---

\* The Commonwealth's contentions are negated by *Commonwealth v. Butler County National Bank*, 376 Pa. 66, 101 A. 2d 699; and by *Commonwealth v. Trust Company of Pittsburgh*, 237 Pa. 353, 85 A. 461, which held that market value had to be used when such value was greater than book value.