HEPBURN *v.* THE SCHOOL DIRECTORS.

1. Under the act of Congress of February 10th, 1868, enacting that the legislature of each State may direct the manner of taxing all the shares of National banks located within said State, subject to the restriction that "the taxation shall not be at a greater rate than is assessed *upon other moneyed capital* in the hands of individual citizens of such State," and the act of the legislature of Pennsylvania of March 31st, 1870, en-

acting that the shares of National banks within that State "shall be taxable for county, school, municipal, and local purposes, at the same rate as now is or may hereafter be assessed and imposed upon other moneyed capital in the hands of individual citizens of the State"—shares in National banks may be valued for taxation for county, school, municipal, and local purposes, at an amount above their par value.

2. This is true of shares in a National bank in Cumberland County, Pennsylvania, although by statute of Pennsylvania, "all mortgages, judgments, recognizances, and moneys owing upon articles of agreement for the sale of real estate," are made exempt from taxation in that county, except for State purposes.

ERROR to the Supreme Court of Pennsylvania.   The case was thus:

An act of Congress of February 10th, 1868, relating to the taxation by States of shares in the National banks, thus enacts: *

" The legislature of each State may determine and direct the manner and place of taxing all the shares of National banks located within said State, *subject to the restriction that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State.*"

An act of Assembly of Pennsylvania, of March 31st, 1870, with a view of giving effect to this act of Congress, further enacts: †

" All the shares of National banks, located within this State, shall be taxable for State purposes at the rate of three mills per annum, upon the assessed value thereof, *and for county, school, municipal, and local purposes, at the same rate as now is or may hereafter be assessed and imposed upon other moneyed capital in the hands of individual citizens of this State.*"

This act gives an appeal to the Auditor-General, who is authorized by the act to correct any errors in the assessment.

Another act of Assembly of Pennsylvania, one of April 4th, 1868,‡ enacts that Cumberland County, in which county the town of Carlisle is situated, enacts additionally:

---

* 15 Stat. at Large, 34.        † Pamphlet Laws. 1870, p. 42.
‡ Ib. 1868, p. 61.

· "All mortgages, judgments, recognizances, and moneys owing upon articles of agreement for the sale of real estate, shall be exempt from taxation except for State purposes," &c.

In this state of legislation, Federal and State, Hepburn, a citizen of Pennsylvania, residing at the borough of Carlisle, in Cumberland County, in the said State, owned four hundred and sixty shares of stock in the First National Bank of Carlisle, the par value of which was $100 a share.

This stock was assessed for county, school, and borough tax by the bank assessor, appointed under an act of Assembly of Pennsylvania, approved April 12th, 1870 at the value of $150 per share.

On amicable suit brought by the school directors to test their right to collect the school tax, the Supreme Court of Pennsylvania adjudged that they had such a right; and, to reverse that judgment, Hepburn brought this writ of error.

*Mr. Joseph Casey, for the plaintiff in error:*

1. There does not seem to be room for doubt that " moneyed capital in the hands of individual citizens"—the term used in the act of Congress of 1868 and in the act of Pennsylvania of 1870—means private investments other than in stocks or securities.   It refers doubtless to loans upon bond and mortgage; loans upon collaterals whether real or personal, and to other loans made in the various modes in which individuals invest their capital upon interest other than in corporation stocks and public securities.

But by the act of Pennsylvania of April 4th, 1868, this "other moneyed capital in the hands of individuals" residing in Cumberland County (in which is the borough of Carlisle), where this bank whose shares are taxed is located and where Hepburn resides, was not subject to taxation for school purposes.   Does not, then, this National bank stock come directly within the express restriction of the act of Congress of February 10th, 1868?   Did not the taxation made in this case unfairly and unjustly discriminate against it?

2. But if we are mistaken in this, we say next that the

assessment should have valued the stock at its par value, and not at a value above it.

The tax assessed upon "other moneyed capital in the hands of individuals" by the State of Pennsylvania is upon the par or nominal value of such capital. If money be at interest on bond or mortgage, at three, four, five, or six per cent. interest per annum, the tax of three mills on the dollar is the same in each case.

Yet the securities would have quite different market values. *Cœteris paribus*, the first three would be below par, the last at or perhaps above it. So, too, when the rate of interest is full, it is the same, too, whether the security be a first mortgage of the highest class—such as would sell in the market above par—or a second mortgage of inferior grade, which could not be sold but at a large discount. There is, in short, no provision in the laws of the State for any assessment of the market value of such securities. They are taken at the value indicated on their face and taxed accordingly.

In valuing these shares at fifty per cent. above par the tax is made fifty per cent. greater than on " other moneyed capital in the hands of individuals."*

*Messrs. J. M. Carlisle and J. D. McPherson, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The most important question presented by the assignment of errors is, whether shares of stock in a National bank can be valued for taxation by the State in which the bank is located, at an amount exceeding their par value. It is certain that they cannot be taxed at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the State. Such is the express provision of the act of Congress.

It is contended that the term " moneyed capital," as here

---

* People v. The Commissioners, 4 Wallace, 244; Bradley v. The People, Ib. 459; Opinion of Miller, National Bank v. Commonwealth, 9 Id. 360.

used, signifies money put out at interest, and that as such capital is not taxed upon more than its par or nominal value, the par value of these shares is their maximum taxable value.

We cannot concede that money at interest is the only moneyed capital included in that term as here used by Congress. The words are " other moneyed capital." That certainly makes stock in these banks moneyed capital, and would seem to indicate that other investments in stocks and securities might be included in that descriptive term.

But even if it were true that these shares can only be taxed as money at interest is, the result contended for would not necessarily follow. The money invested in a bank is not money put out at interest. The money of the bank is so put out and the share of the shareholder represents his proportion of that money. What the amount of this share is, must, in some form, be ascertained in order to determine its taxable value. If the nominal or par value of the stock necessarily indicated this amount, there might be some propriety in making that the taxable value; but, as all know, such is not the case. The available moneyed capital belonging to a bank may be diminished by losses or increased by accumulated profits. Therefore some plan must be devised to ascertain what amount of money at interest is actually represented by a share of stock. The State of Pennsylvania has provided that this may be done by an official appraisement, taking care to prevent abuses by declaring that such appraisement shall not be higher than the current market value of the stock at the place where the bank is located, and by giving an appeal to the Auditor-General, who is authorized to inquire into the value and correct any errors that may appear. There certainly is no apparent injustice in this. It is not the amount of money invested which is wanted for taxation, but the amount of moneyed capital which the investment represents for the time being.

If the value set upon the share does not exceed this amount it will not be assessed at a greater rate than other money at interest. Other plans may be devised to accom-

plish the same end, but it is sufficient for the purposes of this case that this plan is not unreasonable. If a shareholder is not satisfied with the original appraisement, all he has to do is to appeal to the Auditor-General, make known to him the actual condition of the affairs of the bank, and have the error if any exists corrected. Hepburn did not see fit to avail himself of this right which he had. He preferred to rest upon his supposed right, under the act of Congress, to limit the power of assessment to the par value. This right, we think, he did not have.

It is next insisted that no municipal or school taxes could be assessed upon the shares of the First National Bank of Carlisle, a National bank located within the borough of Carlisle, because by the laws of Pennsylvania, as is claimed, other moneyed capital in the hands of individual citizens at that place is exempt from such taxation.

In support of this claim it is shown that all mortgages, judgments, recognizances, and moneys owing upon articles of agreement for the sale of real estate are exempt from taxation in that borough except for State purposes. This is a partial exemption only. It was evidently intended to prevent a double burden by the taxation both of property and debts secured upon it. Necessarily there may be other moneyed capital in the locality than such as is exempt. If there is, moneyed capital, as such, is not exempt. Some part of it only is. It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt. Certainly there is no presumption in favor of such an intention. To have effect it must be manifest. The affirmative of the proposition rests upon him who asserts it. In this case it has not been made to appear.

JUDGMENT AFFIRMED.