# Commonwealth *v.* Merchants & Manufacturers National Bank of Pittsburg, Pennsylvania, Appellant.

*Taxation—Banks—Uniformity of taxation—Act of June 8, 1891—Constitution, art. IX. sec. 1.*

The act of June 8, 1891, P. L. 240, which provides that any bank incorporated by this state or the United States may, in lieu of all taxation except upon its real estate, collect from its shareholders and pay into the state treasury a tax of eight mills on the dollar on the par value of all its shares that have been subscribed for or issued, and that any bank which fails to do so shall be subject to a tax of four mills upon the actual value of all the shares of its capital stock, is not repugnant to art. IX. sec. 1, of the constitution of Pennsylvania, which ordains that " all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The act is not in conflict with the condition upon which the several states are permitted to tax the shares of stock in national banks, namely: " That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

The act is not in conflict with amendment XIV. of the constitution of the United States, which ordains that no state shall " deny to any person within its jurisdiction the equal protection of the laws."

The act provides sufficient means of notice to the shareholders of the stock upon which the tax is imposed.

Argued April 29, 1895. Appeal, No. 8, May T., 1895, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1894, No. 669, on appeal from tax settlement. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from tax settlement.

The case was tried before SIMONTON, P. J., without a jury.

SIMONTON, P. J., delivered the following opinion :

" 1. Defendant is a national bank, organized under the act of Congress of June 3, 1864, and doing business in the city of Pittsburg, Pennsylvania. Its cashier reported, as required by section 7 of the act of June 8, 1891 (P. L. 242), to the auditor general that the whole number of shares of its capital stock issued was 16,000 ; the actual value of each share, $65.00 ; and the actual value of capital stock issued, $1,040,000.

" On this actual value of capital stock issued the auditor general and state treasurer settled an account, Nov. 18, 1893, charging defendant with a tax of four mills on each dollar of said actual value, amounting to $4,160 ; and from said settlement this appeal was taken, Dec. 28, 1893.

" 2. There were, in the city of Pittsburg, during the year 1893, twenty-seven national banks chartered under the same act of congress, and doing the ordinary and general business of a national bank, as was defendant, the aggregate par value of whose shares of capital stock was $11,200,000, its actual market value being largely in excess of the par value and estimated at $21,226,875.

" 3. There were in the state of Pennsylvania, during said year 1893, about 336 national banks doing the same kind of business as defendant, the aggregate par value of whose shares of capital stock was about $72,000,000, its market value being much greater, and estimated at about $128,000,000.

" 4. Nine of the said twenty-seven national banks doing business in the city of Pittsburg in 1893, having capital stock of the par value of $2,800,000, elected to collect from their share-

holders for the year 1893 a tax of eight mills on the dollar upon the par value of their shares, as provided by section 6 of the act of June 8, 1891. The actual value of all the shares of said banks was more than three times the par value, and the amount of tax paid by said banks was therefore much less than it would have been if they had paid four mills on the actual value of all their shares.

"5. There were in Pennsylvania in 1893, as shown by the report of the superintendent of banking, a number of state banks whose entire capital stock at par amounted to $8,461,559; and as reported by them to the superintendent of banking, their total capital, surplus funds and undivided profits amounted to $14,321,350 and the market value of their shares to $16,000,000, and a number of these, whose aggregate capital amounted to not less than twelve per cent of all the moneyed capital invested in shares of state banks in Pennsylvania, by electing to pay the eight mills under said section 6, paid a less amount of tax than they would have paid if they had been taxed at the rate of four mills upon the actual value of all their shares. .

" These facts are found from affidavits presented on the trial and received with the consent of the commonwealth as depositions.

" The learned counsel for defendant have stated in writing the facts as they understand them to be shown by the evidence, and have requested us to adopt their findings as the facts of the case. Some parts of these findings are, however, conclusions of law, and these we do not adopt. But so far as these findings state matters of fact, and are not in conflict with the facts above found by us, we adopt them for the purposes of this case, to show the working of the taxing act in question and the degree to which it produces a lack of uniformity of taxes. They will, therefore, be filed herewith.

"Section 6 of the act of June 8, 1891, provides that any bank or savings institution incorporated by this state or the United States may, in lieu of all taxation except upon its real estate, collect from its shareholders, and pay into the state treasury a tax of eight mills on the dollar on the par value of all its shares that have been subscribed for or issued ; and section 7 imposes upon every national bank located within this commonwealth which fails to collect and pay said tax of eight mills a tax of

four mills upon the actual value of all the shares of its capital stock.

"Defendant objects, by its first specification of appeal, that these sections of the act are repugnant to article IX. section 1 of the constitution of Pennsylvania, which ordains that 'all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.'

"The contention is, that by the terms of these sections of the act in question some national banks of the state are permitted to elect to pay a less rate of tax than four mills upon the dollar of the actual value of their capital stock, while others are required to pay tax at this rate. This result does actually follow the working of the act, for the reason that the par value of the capital stock of some of these banks is so much less than the actual value that a tax upon the former at eight mills is less than a tax on the latter at four mills would be, and naturally these banks elect to pay the eight mills, while others, whose par value is more nearly equal to their actual value, for the same reason decline to pay the eight mills, and are taxed at the rate of four mills upon the actual value of their capital stock. Therefore, while the right of election is given to all, it is the interest of some to elect and of others not to elect, and thus actual and absolute uniformity of taxation is not attained, and is shown by the finding of facts.

"A discussion of the numerous cases cited by counsel for defendant, in which the courts of other states have considered and passed upon the question of the constitutionality of taxing acts, in view of the requirement in their constitutions that taxation shall be uniform, would serve no useful purpose. Many of them were cited and discussed by counsel and by the court in Com. v. Del. Div. Canal Co., 123 Pa. 594, where the defendant contended that section 4 of the act of June 30, 1885, taxing corporate loans, was unconstitutional, because the taxes imposed by it were not uniform.

"In that case the court below found as a fact (page 597) that 'the nominal or par value of bonds and mortgages issued by corporations is no certain measure of their actual value, which is often either above or below their par value, the actual value being dependent upon the value of the property mortgaged,

the rate of interest, the date of maturity and other conditions, some bonds upon which interest is regularly paid selling as low at fifty cents on the dollar, and others as high as one hundred and fifty;' and in discussing the law, said: 'When, however, the law itself is so framed that it necessarily produces gross inequality of burden, no matter how perfectly it may be administered, it would seem impossible to avoid the conclusion that it violates the mandate of the constitution. . . . But if in one case the value to which the rate is applied is the expression of the judgment of the proper official, and in another a mere arbitrary nominal value, it is in the very nature of the case that the resulting taxes cannot be uniform. There can be no definite proportion between the value of the property of the citizen and the amount of his taxes. And, as the findings of fact show, this would be the inevitable consequence of the enforcement of the law in this case, no matter how faultless its administration might be.' And the court below, therefore, held the taxing section there in question unconstitutional. But on appeal the Supreme Court, in an opinion by the late Mr. Justice CLARK, reversed this decision, and, notwithstanding the fact that some of the securities, taxed at their nominal or face value, sold in the market as low as fifty cents, and others as high as one hundred and fifty cents, on the dollar, held that the taxing section was constitutional, and that the taxes were uniform in the sense of that instrument.

"There was certainly as great a want of actual uniformity in the taxes imposed by that act as there is in those collected under the two sections of the act of June 8, 1891, in question in this case, for, as was shown by the finding of fact quoted above, under it the same amount of tax might be imposed on a bond worth $500 as upon another worth $1,500.

"That case was followed by Com. v. Brush Elec. Light Co., 145 Pa. 147, where the findings of fact showed that under the normal working of section 4 of the act of June 7, 1879 (P. L. 114), the tax imposed by it on corporations ranged in amount from less than two mills to over five mills on the actual value of their respective capital stocks, as will be seen by referring to finding of fact No. 5 on page 149 of 145 Pa., and to the table prepared from the evidence and made part of said finding, which is to be found in the report of the same case in 28 W. N. 529.

"The court below, however, held said section constitutional, on the authority of the Del. Div. Canal Co. case above cited, and this ruling was affirmed by the Supreme Court, Mr. Justice WILLIAMS in the opinion saying: 'This is justified by Com. v. Canal Co., 123 Pa. 594. . . . And the learned judge was right in his conclusion that the provisions of the act of 1879 relating to this subject are not objectionable on constitutional grounds.'

"We are unable to distinguish these cases from the one before us. The want of actual uniformity is, as the findings of fact above referred to show, not greater here than it was in those cases, and we therefore think that they preclude any further discussion of the question raised by defendant's first specification of appeal.

"Defendant has specified in its appeal the further objection that the settlement is invalid, because said sections of the act of June 8, 1891, are in conflict with the condition upon which the several states are permitted to tax the shares of stock in national banks, namely, 'that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state.'

"The learned counsel rest their attempt to sustain this objection upon the proposition, stated in their brief, 'that the words, "other moneyed capital," in section 5219 of the United States Revised Statutes, mean *particularly* other moneyed capital invested in the banking business, that is, the shares of stock in banks, national or state;' and this being so, that as the act of 1891 allows some national banks to pay eight mills on the par value of their shares, while others are taxed at the rate of four mills on the actual value of their shares, the requirement of the statute, that the shares of national banks shall not be taxed at a greater rate than other moneyed capital, is violated.

"But an examination of the cases decided by the United States Supreme Court which are cited by counsel shows that this is not the meaning of the words 'other moneyed capital.'

"Thus in Hepburn v. the School Directors, 23 Wall. 480, the argument on behalf of the plaintiff was that 'moneyed capital in the hands of individual citizens means private investments other than in stocks or securities.' But in answer to this the chief justice, delivering the opinion of the court, said: 'It is contended that the term " moneyed capital," as here used,

signifies money put out at interest, and that as such capital is not taxed upon more than its par or nominal value, the par of these shares is their maximum taxable value.

"'We cannot concede that money at interest is the only moneyed capital included in that term as here used by Congress. . The words are " other moneyed capital." That certainly makes stock in these banks moneyed capital, and would seem to indicate that other investments in stocks and securities might be included in that descriptive term. But even if it were true that these shares can only be taxed as money at interest is, the result contended for would not necessarily follow.' That is to say, stock in national banks is 'moneyed capital,' and other investments in stock and securities are 'other moneyed capital.'

"So in Mercantile Bank v. New York, 121 U. S. 138, when the court, speaking of the meaning of the words ' other moneyed capital,' as used in the statute, say : 'Of course it includes shares in national banks ; the use of the word " other " requires this. If bank shares were not moneyed capital, the use of the word " other " in this connection would be without significance ; ' the meaning is the same. The contrast is between national bank shares, which are moneyed capital, and shares of stock in other institutions and securities of other kinds, which are 'other moneyed capital ; ' and the true meaning of this section of the revised statute is as stated in Boyer v. Boyer, 113 U. S. 689, on page 702 : ' Capital invested in national bank shares was intended to be placed upon the same footing of substantial equality in respect of taxation by state authority as the state establishes for other moneyed capital in the hands of individual citizens, however invested, whether in state bank shares or otherwise.'

"The statute does not deal with the question of uniformity of taxation of the shares of different national banks as between themselves, but is simply intended to protect them from taxation at a higher rate than that imposed upon moneyed capital invested otherwise than in the shares of national banks.

"Defendant in its appeal specifies the further objection that the taxing act upon which the settlement appealed from is based provides no means of notice to the shareholders of the stock upon which the tax is imposed.

"The argument is that the tax is in effect a tax upon the

shareholders, and that it is imposed upon them without notice or any provision for notice to them.

" The principle upon which this tax is assessed with respect to notice is the same as that upon which the tax on the capital stock of other corporations is, and has been for half a century, assessed. The settlement is made against the corporation, which is considered for the purpose of taxation the representative of the shareholders. Furthermore, it has been decided in recent cases by the Supreme court that the corporation and the shareholders, as well as the capital stock and the shares of stock, are practically the same : Com. v. Fall Brook Coal Co., 156 Pa. 488; Com. v. Lehigh Coal & Nav. Co., 162 Pa. 603. This being so, notice to the corporation would seem to be, to all intents and purposes, notice to the shareholders. And it has frequently been held that the corporation is not entitled to notice before the settlement is made, but that the requirement of the act of 1811, in relation to public accounts, that a copy of the account settled shall be mailed to the corporation, with the right of appeal from the settlement during sixty days thereafter, is a sufficient provision for notice ; and that, where the copy of the settlement was not actually received, an action brought for the amount of the tax is sufficient notice. And the law evidently presumes that the officers of the bank will notify their stockholders, for, prescribing in section 7 the duties of the auditor general in assessing this tax, it declares that ' it shall be his further duty to hear any stockholders who may desire to be heard on the question of the valuation of the shares as aforesaid.' For these reasons we think these objections cannot be sustained.

" Nor do we think this taxing act is open to the final objection specified in the appeal, that it is in conflict with amendment XIV. of the constitution of the United States, section 1, which, in part, is as follows : ' Nor shall any State . . . . deny to any person within its jurisdiction the equal protection of the laws.'

" The question intended to be raised by this specification was, we think, settled by the Supreme Court of the United States in Bell's Gap Railroad Co. v. Pennsylvania, 134 U. S. 232, followed by Jennings v. Coal Ridge Improvement & Coal Co., 147 U. S. 147, and it is therefore not now open for discussion.

" We therefore conclude :

" 1. That sections 6 and 7 of the act of June 8, 1891, are not repugnant to article IX. section 1 of the constitution of the state of Pennsylvania, which ordains that 'all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.'

" 2. That said sections of said act are not in conflict with the condition upon which the several states are permitted to tax the shares of stock in national banks, namely : ' That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state.'

" 3. That the taxing act upon which the settlement appealed from is based does not fail to provide sufficient means of notice to the shareholders of the stock upon which the tax is imposed, and said settlement is not invalid for want of such notice.

" 4. That said taxing act is not in conflict with amendment XIV. of the constitution of the United States, section 1, which (inter alia) ordains as follows : ' Nor shall any State . . . . deny to any person within its jurisdiction the equal protection of the laws.'

" The commonwealth is therefore entitled to recover as follows :

| | | |
|---|---|---|
| " Amount of tax as per settlement | . . | $4,160 00 |
| " Interest from Jan. 1 to Nov. 22, 1894 @ 12 per cent per annum | . . . . . | 401 46 |
| " Attorney general's commission, 5 per cent | | 208 00 |
| Total | . . . . . | $4,769 46 " |

*Error assigned* was entry of judgment for the commonwealth.

*John Wilson, Scott & Gordon* and *Wm. M. Hall, Jr.,* with him, for appellant.—The act of 1891 works great inequality in the taxation of banks : Cooley's Const. Law, 493 ; People v. Mayor of Brooklyn, 4 Comstock, 420 ; School District v. Readington Twp., 36 N. J. L. 70 ; State v. Ruyon, 12 Vroom, 98 ; State v. Indianapolis, 69 Ind. 378 ; Exchange Bank v. Columbus, 3 Ohio, 15 ; New Orleans v. Davidson, 30 La. Ann. 555 ; Woodbridge v. Detroit, 8 Mich. 301 ; Porter v. R. R., 76 Ill.

580; Knowlton v. Supervisors, 9 Wis. 389; Marsh v. Supervisors, 42 Wis. 502; Weeks v. Milwaukee, 10 Wis. 186; Philleo v. Hiles, 42 Wis. 527; Com. v. Five Cent Savings Bank, 5 Allen, 436; Santa Clara County v. So. Pas. R. R., 18 Fed. Rep. 385; City Nat. Bank v. Paducah, 1 Thompson's Nat. Bank Cases, 300; State Railroad Tax Cases, 92 U. S. 611; Londonderry v. Berger, 2 Pearson, 230; Fox's App., 112 Pa. 352; Com. v. Del. Division Canal Co., 123 Pa. 594; Com. v. Lehigh R. R. R., 129 Pa. 455; Com. v. Sharon Coal Co., 164 Pa. 305.

This system, containing such actual and gross necessary discriminations, not only violates the state constitution, article 9, section 1, as to uniformity, but also violates the federal statute, section 5219, under which only can any taxation of the shares of stock of national banks be levied and collected: Boyer v. Boyer, 113 U. S. 691; People v. Weaver, 100 U. S. 546; Stanley v. Supervisors of Albany, 121 U. S. 542; Pelton v. National Bank, 101 U. S. 146; Lionberger v. Rouse, 9 Wall. 468; Markoe v. Hartfrant, 6 Am. Law Reg. 487; Com. v. Girard Bank, 6 Phila. 431; Pleish v. Hartfrant, 2 Leg. Gaz. 77; Pittsburg v. First Nat. Bank, 55 Pa. 45; Van Allen v. Assessors, 3 Wall. 573; Del. R. R. Tax, 18 Wall. 206; Farrington v. Tennessee, 95 U. S. 679; McMahon v. Palmer, 102 N. Y. 178; Albany City Nat. Bank v. Maher, 19 Blatchf. 175; People v. Pittsburg R. R., 67 Cal. 625; Welty on Assessments, sec. 4; Mulligan v. Smith, 8 Pac. Coast Law J. 499; Railroad Tax, 13 Fed. Rep. 750; McCulloch v. Maryland, 4 Wheat. 316; Watson v. First Nat. Bank, 8 N. E. Rep. 97; People v. Weaver, 100 U. S. 543; Salt Lake Bank v. Golding, 2 Utah, 1; Macon v. First Nat. Bank, 59 Ga. 648; Austin v. Boston, 96 Mass. 359; Cook on Stocks, sec. 562; Cooley on Taxation, 6th ed. sec. 231; Porter v. Rockford, R. I. etc. R. R., 76 Ill. 561; Farrington v. Tennessee, 95 U. S. 679.

The state has a right to collect the tax, if properly assessed, from the bank: National Bank v. Com., 9 Wall. 353.

The act provides no proper notice to the shareholder: Houston v. New Orleans, 119 U. S. 265; Hagar v. Reclamation District, 111 U. S. 701; Com. v. Lehigh V. R. R., 104 Pa. 102; Com. v. Lehigh V. R. R., 129 Pa. 456.

The act violates the fourteenth amendment of the constitu-

tion of the United States: R. R. Tax Cases, 13 Fed. Rep. 748;
Bell's Gap R. R. v. Pennsylvania, 134 U. S. 232.

*John P. Elkin*, deputy attorney general, and *Henry C. McCor-
mick*, attorney general, for appellee, were not heard, but cited in
their printed brief: Com. v. Del. Div. Canal Co., 123 Pa. 594;
Com. v. Brush Electric Light Co., 145 Pa. 147; Hepburn v.
School Directors, 23 Wall. 485; Mercantile Bank v. New York,
121 U. S. 138; Com. v. First Nat. Bank, 96 Am. Dec. 287;
New Orleans v. Houston, 119 U. S. 279; County Santa Clara
v. S. P. R. R., 18 Fed. Rep. 410; Davis v. Los Angeles, 86 Cal.
37; Happy v. Mosher, 48 N. Y. 313; Com. v. Lehigh Coal &
Navigation Co., 162 Pa. 603; Chester City v. Pennsylvania,
134 U. S. 240; Jennings v. Coal Ridge Imp. & Coal Co., 147
U. S. 147.

OPINION BY MR. JUSTICE WILLIAMS, May 20, 1895:
The complaint of the appellant is against the inequality of
burden existing under the operation of the statute providing
for the taxation of national banks. The argument is that in-
equality of burden establishes the unconstitutionality of the law
under which the tax is levied. If the validity of our tax laws
depends upon their ability to stand successfully this test, there
are none of them that can stand. Absolute equality of bur-
den is theoretically possible but it has not been attained in
practice in this state.

It is a reasonable presumption that banks are honestly organ-
ized, and that each one enters upon its business career with an
actual capital exactly equal to the face value of all its shares
of stock. A tax levied at any given rate per cent on the shares
would operate for a few months to produce substantially uni-
form results. But once launched in business each bank is af-
fected by many circumstances and influences that are peculiar
to it. One bank may accumulate its earnings in a large sur-
plus fund to be used in the business of the bank. Another
may divide its earnings in dividends semiannually among its
stockholders. One bank may be managed with financial skill
and economy. Another may be conducted in a careless and
extravagant manner.

One may be located at an active business center and have a

large line of deposits and discounts, another may be located at an unimportant point where money is scarce and loans few. These and many other circumstances result in decided success in some cases, in the swallowing up of earnings in expenses in others, and in a positive impairment of capital in some others. The law, that operated with practical uniformity of result at first, produces noticeable inequality as the results of differences in location and management begin to develop themselves, until results such as are brought to our attention in this case flow from the application of a uniform rate of taxation to the shares of stock at their par value. The inequalities are due to causes which the legislature could not be required to foresee or provide against, and for that reason they cannot be charged to the law. But the appellant complains that the law furnishes two modes and rates for taxing the stock of national banks, and denies that this can be constitutionally done. But the state finds it convenient and economical to tax its corporations and collect the taxes through its own proper machinery. To induce the banks to make their returns to the auditor general and to pay their taxes into the state treasury the state offers an inducement. It proposes to relieve all the banks from local taxation that elect to pay a certain rate per cent upon their shares of stock directly into the state treasury. All the banks may come into this class. All that do are assessed with a uniform rate per cent which they pay at one time and one place.

Those that elect not to pay this rate are assessed at a lower and uniform rate upon the appraised value of their shares, and upon this valuation the local as well as the state taxes are assessed. We cannot say that this classification is unconstitutional, nor that the rate per cent differs so widely as to invalidate the law. The rate is uniform for each class, and the aggregate of the taxes levied per share in both classes is as nearly the same as could well be estimated in advance of the action of the local authorities, which it is impossible to forecast with accuracy. The banks are themselves responsible for the existence of the second class. They are all invited to deal directly with the state. If they do not it is fair to assume that their action is guided by what they believe to be their own pecuniary interest. Of a want of uniformity which is the re-

sult of their own deliberate action, they certainly ought not to complain. Of a want of equality of burden that results from circumstances affecting particular banks, and is not produced by the application of the law, they cannot complain.

We think the learned judge decided this case correctly and the judgment is now affirmed.