SCHUYLKILL TRUST CO. *v.* PENNSYLVANIA.

No. 3.   Argued October 14, 1935.—Decided November 11, 1935.

114

*Mr. John Robert Jones* for appellant.

*Mr. Manuel Kraus,* Deputy Attorney General of Pennsylvania, with whom *Mr. Charles J. Margiotti,* Attorney General, was on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The appellant, a trust company organized under the laws of Pennsylvania, challenges a statute of the State as construed and applied in the assessment of a tax for the year 1930, denominated a tax on shares. From a settlement made against the company by the Department of Revenue an appeal was taken to the Court of Common Pleas of Dauphin County, which, after trial without a jury, entered judgment in favor of the Commonwealth.[1] The Supreme Court of Pennsylvania affirmed the judgment.[2] The appellant's contention is that the Act, as so construed and applied by the Department and the courts, discriminates against United States Government bonds, bonds of federal instrumentalities, and national bank stocks, included in the appellant's assets. The appellee replies that the tax is upon the shares of stock as such, and not upon the assets which represent their value; that, in fact, no tax whatever, much less a discriminatory tax, has been levied upon exempt assets of the company.

Prior to the year 1907 Pennsylvania trust companies were liable for what is known as a capital stock tax, levied upon the corporation. In the administration of

---

[1] 38 Dauphin County Reports, 22.

[2] 315 Pa. 429; 173 Atl. 309.

that form of exaction certain securities, such as United States bonds and national bank shares, are eliminated from tax by deduction of their value from the value of the total assets of the corporations which own them. The deduction of exempt securities is made to avoid double taxation, the theory being that the shares issued by a corporation and its capital stock are identical, so that taxation of the one is taxation of the other.[3]

On June 13, 1907, the General Assembly adopted an act prescribing another method of taxation in the case of trust companies. Its pertinent provisions are copied in the margin.[4] This statute in terms lays a tax upon shares rather than upon corporate assets. The value of each share is to be ascertained by adding the value of capital stock paid in, surplus, and undivided profits, and dividing the total by the number of outstanding shares. Thus the exaction is measured by the value of the company's net assets. This involves the exclusion of corporate liabilities from the measure of value to which the rate is to be applied.[5] By successive amendments it was di-

---

[3] *Commonwealth* v. *Standard Oil Co.*, 101 Pa. 119, 145; *Commonwealth* v. *Fall Brook Coal Co.*, 156 Pa. 488; 26 Atl. 1071; *Commonwealth* v. *Pennsylvania R. Co.*, 297 Pa. 308, 314; 147 Atl. 242; *Commonwealth* v. *Eastern Securities Co.*, 309 Pa. 44; 163 Atl. 157.

[4] " Section 1. That from and after the passage of this act, every company . . . shall . . . make to the Auditor General a report in writing . . . setting forth the full number of shares of the capital stock subscribed for or issued by such company, and the actual value thereof, which shall be ascertained as hereinafter provided; and thereupon it shall be the duty of the Auditor General to assess such shares for taxation at the rate of five mills upon each dollar of the actual value thereof, the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares. . . ." [L. 1907, Act No. 512, p. 640.]

[5] *Commonwealth* v. *Union Trust Co.*, 237 Pa. 353, 355, 356; 85 Atl. 461.

rected that the value of each share of stock should be ascertained by adding together *so much of* the amount of capital stock paid in, surplus, and undivided profits *as is not invested in the shares of stock of corporations liable to pay to the Commonwealth a capital stock tax or tax on shares, or relieved from the payment of capital stock tax or tax on shares,* and dividing the sum by the number of outstanding shares.[6] These amendments were combined with the original act, in a single statute of April 25, 1929.[7]

Obviously, the theory of the amendments was that as trust companies, so long as they had been liable for capital stock tax, had been exempted from payment of tax reckoned upon assets which had already paid a tax or were exempt from tax,—that is, the stock of corporations of Pennsylvania which had paid a capital stock tax or whose shares had been taxed or had been exempted from tax,—it was proper, in levying a tax upon the shares of trust companies reckoned upon the net assets of those companies, to exempt from such net assets so much thereof as represented shares of corporations which had already paid a tax or, under the policy of the Commonwealth, had been exempted.

The impost as laid by the Act of 1907 was a true tax on shares and not a tax upon the assets of trust companies. Such an exaction is not a tax upon United States securities owned by the corporation whose shares are taxed or upon securities exempt from taxation because issued by instrumentalities of the Federal Government.[8]

---

[6] Act of July 11, 1923, P. L. 1071–72. Act of May 7, 1927, P. L. 853, 855.

[7] P. L. 673. The Act of April 9, 1929, P. L. 343, §§ 807 and 1705 (the so-called Fiscal Code), did not alter the substance of the law but merely affected the executive agencies which were to administer it.

[8] *Van Allen* v. *Assessors,* 3 Wall. 573; *Cleveland Trust Co.* v. *Lander,* 184 U. S. 111; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103.

It will be observed that by the amendments to the Act of 1907 the measure of the tax is not in any sense the value of the shares as such, but a value reflected by *so much* of the net assets as is not represented by shares of Pennsylvania corporations already taxed or exempt from tax. In the administration of the act as amended the procedure which has been followed and approved [9] is first to deduct the liabilities from the total assets, thus arriving at the net assets. The theory has been that exempt shares owned by the trust company must be shown to have been actually purchased out of capital stock or surplus in order to obtain a deduction of their full value from the gross assets. If the company is unable to demonstrate that they were purchased in that manner, then a proportional method of deduction is adopted. This is to apply to the taxed value of all such exempt securities a fraction the numerator of which is the net assets and the denominator the gross assets. The result of applying this fraction to the taxed value of exempt shares is said to give the proportion of those exempt shares attributable to capital, surplus, and undivided profits, and the quotient is accordingly deducted from the value of the net assets to obtain the measure of the tax on all the shares, and this, divided by the number of outstanding shares, gives the measure of the tax for each share. In the instant case the trust company held amongst its assets shares of Pennsylvania corporations, exempt from tax, of the value of $135,787. It also held shares of the Philadelphia National Bank of the value of $20,202. These were found by the Department of Revenue to have been taxed at a total taxable value of $71,373. Applying the fractional formula mentioned, it was found that $8,886 of their taxable value should be attributed to capital, surplus and undivided profits, and deducted from the

[9] *Commonwealth* v. *Hazelwood Savings & Trust Co.*, 271 Pa. 375; 114 Atl. 368.

amount of the net assets.  As the net assets had been ascertained to be $467,714 the deduction brought this figure down to $458,028, to which the rate of tax of five mills was applied.

It should be stated that under the Act the corporation is required to make a report as the basis for the calculation of the tax, and, upon that report, the Department of Revenue settles the tax which is assessed against the corporation.  The trust company, and not the stockholders, is liable in the first instance for the tax.  Though given the right to pay the tax from its funds or to collect the amount from its stockholders, neither the company nor the Commonwealth is given any lien upon the stock for the amount of the tax.  As the obligation to pay the Commonwealth is that of the company, its interest and its right to contest are beyond question.

In specifications of objection filed with its appeal from the tax settlement in the Court of Common Pleas, the trust company insisted that all exempt shares (including the shares of the Philadelphia National Bank) should be deducted from the gross assets in full.  This would exempt their full value rather than a proportion of their taxed value as ascertained by the use of the proportional method above described.  The further objection was made that the method of settlement adopted resulted in discrimination against exempt securities issued by the United States or other federal instrumentalities, and that these should have been deducted at their full value from the gross assets before any computation of the tax.  The Common Pleas Court overruled these objections (without discussing the treatment of the national bank shares), saying, with respect to United States bonds and like exempt securities, that as the tax was a tax upon shares, and not upon the assets of the trust company, those securities had not in fact been taxed.  In affirming the judgment the Supreme Court of Pennsylvania said that as

the specifications of objections had not covered the point as to national bank shares and the court below had not discussed that matter it was not open in the appellate court. As respects United States bonds, and other Federal securities, it concurred in the view of the lower court.

*First.* The appellant insists that as merely a portion of the net assets of the corporation is taken as the basis or measure of the tax, it cannot be upon the shares as shares. The appellee relies upon the statement of the Supreme Court of Pennsylvania that the levy is upon the shares and not upon assets. The appellant asks us to find to the contrary. We give great weight to the characterization of a tax, or the interpretation of a state law, emanating from the highest court of the State, but where a federal question is involved we are not bound by the label attached to the tax or the character ascribed to the law. We must determine for ourselves the true nature of the tax by ascertaining its operation and effect.[10]

It is clear that the tax is not measured by each shareholder's aliquot proportion of all the assets of the company. If amongst those assets are found shares of stock of Pennsylvania corporations which, or whose shares, have been declared exempt by the State, this exemption is effected in the instant case by taking them wholly or partially out of the net assets which are the base for the tax. The appellant says this demonstrates that the tax is one upon assets. If the appellant is right the exaction operates as a discrimination against Government securities and other assets exempt under federal law. *Missouri Insurance Co.* v. *Gehner,* 281 U. S. 313. If the tax is one truly upon that independent property evidenced by the ownership of a share of corporate stock its collection does not discriminate against United States securities.[11]

---

[10] *Senior* v. *Braden,* 295 U. S. 422, 429.

[11] See note 8, *supra.*

We think that the issue of discrimination is not to be resolved by a choice between the two contentions as to the nature of the tax. The point is that the State has chosen a portion only of the net assets of the corporation as a measure of the tax, whether the exaction be from the company or its shareholders. The State has exempted certain assets on the theory that to measure the tax in part by their value would in effect be to tax them twice. If to measure the shareholder's tax by inclusion of these taxed or exempted securities found amongst the company's assets would be to tax the shareholder in virtue of the company's ownership of those securities, it seems clear that to refuse to exempt United States securities from the measure of the tax is to lay a tax reckoned upon their value. To put it otherwise, if to exclude securities already taxed or exempted from tax pursuant to the policy of the Commonwealth avoids double taxation, to include United States securities in the measure of the tax seems inevitably to increase the burden of the tax by reason of their ownership. If the burden of the tax be lifted in respect of some securities (as it is by confession from those issued by certain Pennsylvania corporations) it must necessarily fall on the remaining securities owned by the company. If the tax is lifted from the shares of certain trust companies because those companies own only stocks already taxed or relieved from taxation by the State, and shares in other trust companies are taxed amongst whose assets there are United States bonds or other securities entitled to exemption because issued by federal instrumentalities, which are figured in the base of the tax, it is impossible to avoid the conclusion that the law discriminates in favor of the former and against the latter solely by reason of ownership of such federal securities.

*Second.* It is indisputable that the shares of stock of the Philadelphia National Bank owned by the appellant

were included in the base or measure of the tax. It is undenied that these shares had been taxed to the trust company, as permitted by R. S. 5219, and in accordance with the applicable statutes of Pennsylvania;[12] and it must be conceded that having once been taxed to their owner, the trust company, they may not again be made the base or measure of a tax to that company's stockholders. *Bank of California* v. *Richardson,* 248 U. S. 476. The trial court seems to have excluded them upon the theory that they were not within the intent of the taxing statute, which the court thought meant to exempt only shares of Pennsylvania corporations which had been taxed or relieved from tax by local law. This view the trial court appears to have abandoned in a later case,[13] where it was held that stock of a federal reserve bank was within the meaning of the Pennsylvania act and entitled to exemption. This later decision was affirmed by the Supreme Court of Pennsylvania.[14]

We are told that the matter is not open here for the reason that it was not raised on appeal to the Dauphin County court, was not discussed by that court, and consequently the Supreme Court refused to consider it. Whether the point was in fact raised in the court below is itself a federal question, and we are bound to examine the record to resolve it.[15] It appears that in the specifications of objection filed in Dauphin County court complaint was made that whereas there should have been a flat deduction of all shares of corporations theretofore taxed or exempted from tax, shares of the Philadelphia

---

[12]Act of July 15, 1897, P. L. 292, as amended by Act of April 25, 1929, P. L. 677.

[13] *Commonwealth* v. *Provident Trust Co.,* 40 Dauphin County (Pa.), 146, 177.

[14] 319 Pa. 385; 180 Atl. 16.

[15] *Carter* v. *Texas,* 177 U. S. 442, 447; *Ward* v. *Love County,* 253 U. S. 17, 22.

National Bank were included in shares granted only a proportional deduction. It further appears that in accordance with Pennsylvania practice, after the trial of the cause to the court without a jury the appellant submitted requests for conclusions of law. Amongst these were requests 10 and 16, which referred specifically to the Philadelphia National Bank stock, and severally requested the court to find (a) that these shares having been once taxed under another act, to the trust company as owner, could not be taxed a second time, and (b) that the failure to deduct the full value of the shares from the net assets of the trust company operated to discriminate and impose a tax upon the shares of stock in violation of R. S. 5219, they having once been taxed under another statute. The court answered both these requests in writing, " Refused." The refusal of the requests was made the subject of exceptions which quoted the requests and the answers of the court verbatim. The exceptions were overruled by the court and errors were assigned to the Supreme Court of Pennsylvania to the overruling of the exceptions applicable to the refusal of the requests in question, which were again quoted verbatim, with the answer of the court to the request and the overruling of the corresponding exception. In addition to these assignments of error the appellant in the statement of questions involved, required by the rules of the Supreme Court of Pennsylvania to be made a part of the brief on appeal, amongst others set forth the following question: "Are assets consisting of national bank shares to be eliminated from consideration in determining the taxable value to which the rate of tax is to be applied by deducting their actual value from the value of the net assets? Answer of the court below No."

We think that notwithstanding the Dauphin County court, in its opinion, failed to discuss this matter, as the Supreme Court of Pennsylvania points out, the question was sharply presented to that court and decided by it, and

that the rights of the appellant were specifically preserved and pressed at every stage of the proceeding. We find, therefore, that the question is here for decision. It might well be disposed of by reference to what has already been said with respect to bonds of the United States and like securities. The discrimination here disclosed is, however, more obvious than in the case of the other securities mentioned. The Commonwealth of Pennsylvania elected to exempt certain shares of stock of its own corporations because they had already been taxed. It exempted them because to include them in the base would be in effect to tax them a second time. The shares of the Philadelphia National Bank had also been taxed pursuant to R. S. 5219, and if they were to be treated on an equal footing with shares of domestic corporations the State was bound to afford them a similar exemption from a second exaction.

*Third.* The appellant argues that if, as declared by the Supreme Court of Pennsylvania, the tax is one upon shares as such, it cannot be laid or collected by the Commonwealth in respect of 166 shares of stock of the appellant which by confession are owned by individual citizens and residents of states other than Pennsylvania, for the reason that such shares have no taxable situs in Pennsylvania. In view of the grounds of our decision we find it unnecessary to pass upon this contention.

The judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Cardozo, dissenting.

I think the judgment under review is right in so far as it permits the inclusion of government bonds as factors of value in the assessment of the tax, and wrong only in so far as it violates a provision of § 5219 of the United States Revised Statutes by the inclusion of shares in the Philadelphia National Bank.

The tax in controversy is not laid upon the capital of the trust company. It is laid upon the shares, payment being made in the first instance by the corporation as the agent of the shareholders with a remedy over for moneys so advanced. *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 518; *Commonwealth* v. *Merchants & Manufacturers National Bank*, 168 Pa. 309; 31 Atl. 1065; affirmed 167 U. S. 461; *Commonwealth* v. *Mortgage Trust Co.*, 227 Pa. 163; 76 Atl. 5; *Commonwealth* v. *Union Trust Co.*, 237 Pa. 353; 85 Atl. 461; *Northern Trust Co.* v. *McCoach*, 215 Fed. 991; cf. *National Bank* v. *Commonwealth*, 9 Wall. 353, 362; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440, 444, 445. The tax being laid upon the shares, and not upon the capital, the Constitution does not make it necessary in the assessment of the tax to reduce the value of the shares to the extent that bonds of the national government are included in the capital. This is settled law. *Van Allen* v. *Assessors*, 3 Wall. 573; *Cleveland Trust Co.* v. *Lander*, 184 U. S. 111; *Des Moines Bank* v. *Fairweather*, 263 U. S. 103, 112; *Educational Films Corp.* v. *Ward*, 282 U. S. 379, 390.

The argument for the appellant is that the tax might have been lawful if the shares had been valued without any deductions growing out of the nature of the capital, but that the moment a deduction was allowed in respect of any class, there was an unlawful discrimination against government securities unless the deduction was enlarged and made applicable to them. The attack is thus confined to amendments of the act which were placed upon the statute books in three years (1923, 1927, 1929), for there was no deduction of any kind under the act as first adopted in 1907. These amendments provide that the assessment shall be reduced by deducting therefrom (1) such part of the assets of the trust company as is invested in shares of other corporations taxed by the Com-

monwealth of Pennsylvania upon capital or shares (1923, July 11, P. L. 1071, 1072, reënacted by 1927, May 7, P. L. 853, 855; 1929, April 25, P. L. 673, 675), and (2) such part as is invested in the shares of other corporations relieved by the Commonwealth from a capital tax or a tax on shares (1927, May 7, P. L. 853, 855; 1929, April 25, P. L. 673, 675). The purpose of the first deduction is to avoid double taxation or something akin thereto. Cf. *Commonwealth* v. *Fall Brook Coal Co.*, 156 Pa. 488, 495; 26 Atl. 1071; *Commonwealth* v. *Lehigh Coal & Navigation Co.*, 162 Pa. 603, 609; 29 Atl. 664. The purpose of the second is to promote the policy of the Commonwealth whereby particular kinds of business (i. e., the business of manufacturing corporations, laundering corporations and corporations for the processing and curing of meats) are relieved from the payment of taxes imposed on other corporations to the extent that the business so favored is carried on in Pennsylvania.\* *Dupuy* v. *Johns*, 261 Pa. 40, 46; 104 Atl. 565.

---

\* The following is the text of the statute which defines the corporations entitled to such relief:

"And provided further, That the provisions of this section shall not apply to the taxation of the capital stock of corporations, limited partnerships, and joint-stock associations, organized for laundering, for the processing and curing of meats, their products and by-products, or for manufacturing purposes, which is invested in and actually and exclusively employed in, carrying on laundering, the processing and curing of meats, their products and by-products, or manufacturing within the State, excepting companies engaged in the brewing or distilling of spirits or malt liquors, and such as enjoy and exercise the right of eminent domain; but every corporation, limited partnership, or joint-stock association organized for the purpose of laundering, or processing and curing meats, their products and by-products, or manufacturing, shall pay the State tax of five mills herein provided, upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the laundering or manufacturing business, or the business of processing and curing meats, their products and by-

At the time of the assessment the appellant was the owner of shares in corporations that paid a tax upon their capital to the Commonwealth of Pennsylvania. Purdon's Pennsylvania Statutes, Title 72, § 1871. These shares will be described for convenience as investments in class number 1. Except for certain shares in the Philadelphia National Bank, which will be separately considered, the assets did not include an interest in corporations that paid a tax upon their shares as distinguished from one upon their capital. The appellant was also the owner, or so it will be assumed, of shares of stock in manufacturing corporations that were relieved from any tax. These shares will be described for convenience as investments in class number 2. The holding now is that the deduction of the shares of either of these classes is an act of discrimination forbidden by the national constitution unless investments in obligations issued by the national government are accorded the same favor.

I read the cases otherwise. The statute was not passed as an act of " unfriendly discrimination " (*Adams* v. *Nashville*, 95 U. S. 19; *Mercantile Bank* v. *New York*, 121 U. S. 138, 161; *Aberdeen Bank* v. *Chehalis County, supra*, at p. 461) against the national securities, nor was it passed in aid of classes of investments with which the national securities are in substantial competition. In the absence of one or other of these motives or results the prejudice, if

products, in addition to the local taxes assessed upon its property in the district where located; it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the laundering or manufacturing plant and business, or the plant and business used in the processing and curing of meats, their products and by-products: Provided further, In case of fire and marine insurance companies, the tax imposed by this section shall be at the rate of three mills upon each dollar of the actual value of the whole capital stock: Provided, That nothing in this act shall be so construed as to apply to building and loan associations chartered by the State of Pennsylvania." Purdon's Penn. Statutes, Title 72, § 1892.

any, is too remote to be forbidden. There is no room in the solution of problems of this order for doctrinaire definitions, heedless of practical results. *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 523, 524. " In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other." *Metcalf & Eddy* v. *Mitchell, supra,* at p. 523. A sterile formalism would quickly lead to an impasse, the activities of the states checked because of an indirect effect upon the agencies of the federal government, and the federal activities checked for fear of a like effect upon the agencies of the states. One must view the subject in a large way, if government is to go on at all. *Educational Films Corp.* v. *Ward, supra,* at p. 390 and cases there cited; *Pacific Co.* v. *Johnson,* 285 U. S. 480, 489; *Trinityfarm Co.* v. *Grosjean,* 291 U. S. 466; *Willcuts* v. *Bunn,* 282 U. S. 216, 225, 226; *Helvering* v. *Powers,* 293 U. S. 214, 225.

" Unfriendly discrimination " might be inferred if securities of every kind were excluded from the reckoning with the single exception of the obligations of the national government. That would be an extreme case, the conclusion hardly doubtful. Even though hostility were not so pointed as in the case supposed, there might still be an invidious distinction if securities in substantial competition with evidences of indebtedness issued by the national government had been given a preferred position. Nothing of the kind appears. " For reasons of public policy and not as an unfriendly discrimination " (*Aberdeen Bank* v. *Chehalis County, supra,* at p. 461), the value of a share in a trust company is to be ascertained by excluding from the assets the shares in other corporations that are liable to the state for a tax upon their capital. Let it be assumed, for illustration, that a trust company is the owner of shares of stock in a department store doing business in Philadelphia. Under the statutes of Pennsylvania a bus-

iness of that kind pays a tax upon its capital. A trust company does not. If it did, a hardship akin to that of double taxation would result if its interest in the department store were made use of to magnify its burden. But the process of taxation does not end at that point. By the plan of the statute the assessor passes over the trust company and lays the tax upon the shareholders. The same considerations of fair dealing and equality are then applicable to them. So at least the legislature of Pennsylvania might not unreasonably believe. Never before has it been held that out of deference or favor toward the securities of government a state is disabled from framing its system of taxation along lines of equity and justice. *Hepburn* v. *School Directors*, 23 Wall. 480, 485.

What is true of investments in class number 1 is true also of investments in class number 2. " For reasons of public policy and not as an unfriendly discrimination " (*Aberdeen Bank* v. *Chehalis County, supra*), corporations organized for laundering, for the processing and curing of meats, and for manufacturing within the state have been relieved by Pennsylvania from liability for a tax upon their capital. The motive dictating that exemption is the desire to induce capital to come or stay within the state when employed in forms of enterprise believed to be important for the good of the community. *Dupuy* v. *Johns, supra; Commonwealth* v. *Barnes Bros. Co.,* 5 Dauph. 75, 77; cf. *New York State* v. *Roberts,* 171 U. S. 658, 665, 666. In promotion of the same policy the shares of corporations thus relieved from liability for a tax are excluded from the reckoning when shareholders in trust companies are taxed upon the value of their holdings. The reckoning does not exclude the bonds or notes or other evidence of indebtedness of corporations of any kind, foreign or domestic. It does not exclude the shares of any corporation not engaged in the enumerated forms of business, except in so far as such other corporations have al-

ready paid a tax upon their capital or shares. It does not exclude the shares of manufacturing corporations except to the extent of the capital employed in Pennsylvania. The deduction is limited in range and beneficent in aim.

The situation, then, is this. Vast classes of securities—bonds and notes of every kind, as well as shares of stock in many and varied enterprises—are in the same position for the purpose of the tax in suit as government bonds and notes. The few investments that occupy a different position are not comparable in kind or in attractiveness to the obligations of the government and do not substantially compete with them. To hold that there was discrimination here in any forbidden sense is to hold that bonds and notes of the United States must be deducted from the value of the shares if there is a deduction of any form of investment, no matter how minute in amount or alien in quality. Assume, for illustration, an exemption of the shares of corporations engaged in the manufacture of books or in the sale of works of art, an exemption accorded in furtherance of a policy to foster art and letters. If the prevailing opinion stands, the policy in such a case must be abandoned or the federal bonds included. Assume again that laundering corporations only had been relieved by Pennsylvania from liability for a tax upon their capital. Laundering corporations, as we have seen, were actually relieved, but manufacturing corporations also. The prevailing opinion, if it stands, would bring us to a holding that laundering corporations could not be favored without hostility and peril to the treasury at Washington. This is to lose sight of the essence of discriminatory statutes and to stick in the bark of a hard and narrow verbalism.

From such incongruities and excesses the avenue of escape is clear. It is to be found in the acceptance of the test put forward in this opinion. The discrimination, as

has been said, must be so marked as to justify the inference that it was unfriendly in design or at the very least it must favor forms of investment that are in substantial competition with government securities. A helpful analogy is found in the taxation of national banks. By R. S. § 5219; 12 U. S. C. § 548, the several states may tax the shares of national banks, but " the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks." There are many cases in this court expounding that enactment. *Hepburn* v. *School Directors, supra,* was a case where a statute of a state had given exemption from taxation to " all mortgages, judgments, recognizances and moneys owing upon articles of agreement for the sale of real estate." The court assumed that the exempt investments might be ranked as moneyed capital. The tax upon the bank shares was none the less upheld. The exemption was partial only. " It was evidently intended to prevent a double burden by the taxation both of property and debts secured upon it." *Id.* at p. 485. There was no token of a hostile purpose. " It could not have been the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt." *Ibid. Adams* v. *Nashville,* 95 U. S. 19, was a case where a municipal ordinance gave exemption from taxation to the municipal bonds. Again the ruling was that this exemption of particular property did not affect the validity of the tax upon the shares. " The plain intention of that statute [R. S. § 5219] was to protect the corporations formed under its authority from unfriendly discrimination by the States in the exercise of their taxing power." *Id.* at p. 22. " It was not intended to cut off the power to exempt particular kinds of property if the legislature chose to do so." *Ibid. Mercantile Bank* v. *New York,* 121 U. S. 138, was a case where exemption had been given

to bonds of municipal corporations and also to deposits in savings banks. Again the protest of discrimination was unavailing to defeat the tax. After quoting from *Hepburn* v. *School Directors* and *Adams* v. *Nashville,* the court went on to say (p. 161): " The only limitation, upon deliberate reflection, we now think it necessary to add, is that these exemptions should be founded upon just reason, and not operate as an unfriendly discrimination against investments in national banks." The same note is sounded in *Aberdeen Bank* v. *Chehalis County, supra.* Even though the investments subjected to a lighter tax are to be classed as moneyed capital, this is unavailing without more to condemn the classification as unlawful. Unless the favored moneyed capital is in substantial competition with the business of national banks, the preference is innocent in aim and harmless in result. At least, the harm, if any, is too remote and dubious to vitiate the tax. *First National Bank* v. *Hartford,* 273 U. S. 548, 552; *Minnesota* v. *First National Bank,* 273 U. S. 561, 568; *Georgetown National Bank* v. *Anderson,* 269 U. S. 341, 348; *First National Bank* v. *Tax Commission,* 289 U. S. 60, 65, 66; cf. *Hibernia Savings Society* v. *San Francisco,* 200 U. S. 310, 314, 315. The conclusion is even clearer where the investment may not properly be classified as moneyed capital at all.*

Two cases, *National Life Insurance Co.* v. *United States,* 277 U. S. 508, and *Missouri ex rel. Missouri Insurance Co.* v. *Gehner,* 281 U. S. 313, much relied upon by the appellant, are far beside the mark.

The first of these cases brought up a controversy as to a tax laid by Congress on the income of a life insurance company. The company was to be allowed (1) a deduc-

---

* For other and less direct analogies see: *Cumberland Coal Co.* v. *Board of Revision,* 284 U. S. 23, 28; *Iowa-Des Moines Bank* v. *Bennett,* 284 U. S. 239, 245; *Rowley* v. *Chicago & N. W. Ry. Co.,* 293 U. S. 102, 111.

tion for tax exempt securities, and (2) an amount equal to 4% of its mean reserve fund, diminished, however, by the amount of the first allowance, the interest on government securities exempt under the federal law. The court held that the effect of the second allowance was to cancel the exemption conceded by the first.

The second of the two cases was one where in the view of a majority of the court a tax had been laid directly on the capital assets of the taxpayer and so on the government bonds included in the assets. It was not a case like this where the shares and not the capital were subjected to the burden.

I am unable for these reasons to discover an unlawful discrimination though the tax be assessed in accordance with the statute.

Assuming such a discrimination, I do not understand that any mandate is laid by this court upon the Supreme Court of Pennsylvania as to the choice between two methods of avoiding or correcting it.

The Acts of 1923, 1927 and 1929 prescribing the deductions, were amendatory statutes, separable, even though invalid, from the acts thereby amended. *Eberle* v. *Michigan*, 232 U. S. 700, 705; *Davis* v. *Wallace*, 257 U. S. 478, 484, 485; *Truax* v. *Corrigan*, 257 U. S. 312, 342.

If the state maintains the deductions prescribed by the amendments, it must remove the discrimination now held to be unlawful, even at the price of enlarging the deductions. *Iowa-Des Moines Bank* v. *Bennett*, 284 U. S. 239, 247. On the other hand, it may cancel the deductions altogether, annulling the amendatory acts in so far as they prescribe a new method of valuation and going back in that respect to the law previously in force. In that event the tax to be paid by the appellant will be increased instead of lessened. The choice between these curative measures must be made by the state court.

For reasons stated in *Bank of California* v. *Richardson*, 248 U. S. 476, the assessment is excessive to the extent that it includes shares of stock of the Philadelphia National Bank belonging to the Trust Company. These shares having been taxed to the Trust Company as owner could not properly be taxed again to a shareholder of the owner. *Bank of California* v. *Richardson, supra;* R. S. § 5219.

Other questions are in the case, but they are not decided in the prevailing opinion, and will not be considered here.

The judgment should be modified by directing the deduction from the assessment of the value of the appellant's shares in the Philadelphia National Bank, and as modified affirmed.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this opinion.